Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 21, 2003           Decided June 3, 2003

No. 02-5169

WILLIAM THOMAS, ET AL.,
APPELLEES

v.

NATIONAL SCIENCE FOUNDATION,
APPELLANT

————

Appeal from the United States District Court
for the District of Columbia
(No. 97cv02412)

————

*Michael E. Robinson*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *Michael J. Singer*, Attorney, U.S. Department of Justice. *R. Craig Lawrence* and *Lisa S. Goldfluss*, Assistant U.S. Attorneys, entered appearances.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*William H. Bode* argued the cause for appellees. With him on the brief was *Anne R. Noble*.

*Arthur B. Spitzer*, *Amanda Frost* and *Brian Wolfman* were on the brief for *amici curiae* ACLU and Public Citizen, Inc., in support of appellees.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: In 1995, the National Science Foundation ("NSF"), the sole appellant before this court, and Network Solutions, Inc. ("NSI"), a private contractor, entered into an agreement which permitted NSI to collect fees for Internet registration services. NSI and NSF divided the fees 70%-30%, with NSF's 30% share deposited into an Intellectual Infrastructure Fund ("Fund") for future Government use on Internet projects. In 1997, William Thomas and other parties (collectively, "appellees"), filed a suit in District Court seeking to enjoin NSF and NSI from spending monies in the Fund and claiming restitution of fees collected from domain name registrants on the Internet. The District Court issued a preliminary injunction temporarily barring NSF and NSI from spending any money in the Fund. *See Thomas v. Network Solutions, Inc.,* No. 97-02412 (D.D.C. Feb. 2, 1998) ("*Injunction Order*"), *reprinted in* Appendix ("App.") 71-83. Subsequently, the District Court dismissed all counts of the Amended Complaint except Count One and dismissed NSI from the lawsuit (because Count One concerned only NSF.) *See Thomas v. Network Solutions, Inc.*, 2 F. Supp. 2d 22, 38 (D.D.C. 1998) ("*SJ Decision*"). The *SJ Decision* also granted partial summary judgment for appellees, holding that the portion of the registration fees deposited in the Fund emanated from a tax that was neither imposed nor ratified by Congress as required by Article I, Section 8 of the Constitution. Although the District Court found the "tax" unconstitutional, it awarded no money relief to appellees.

Before the District Court was able to render final judgment or issue an order for specific relief in the case, the President signed into law H.R. 3579, the Fiscal Year 1998 Supplemental

Appropriations and Rescissions Act. Section 8003 of the statute "legalized and ratified" the registration fee and the monies held by NSF in the Fund, thus rendering moot appellees' claim before the District Court. The District Court then vacated the preliminary injunction and dismissed the case. *Thomas v. Network Solutions, Inc.*, No. 97-02412 (D.D.C. Aug. 28, 1998) ("*Dismissal Order*"), *reprinted in* App. 84-98. The District Court's judgment was affirmed by this court in *Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 507 (D.C. Cir. 1999) ("*Thomas II*").

Appellees then filed a motion for attorney's fees and costs against NSF under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (1982). The District Court, held that, because they had succeeded in securing a preliminary injunction and a partial summary judgment, appellees were "prevailing parties" under EAJA and, thus, entitled to fees and costs. *Thomas v. Network Solutions, Inc.*, No. 97-02412 (D.D.C. Mar. 22, 2002) ("*Fee Award*"), *reprinted in* App. 551-59; *Thomas v. Network Solutions, Inc.*, No. 97-02412 (D.D.C. Mar. 23, 2001) ("*Fee Decision*"), *reprinted in* App. 399-422. NSF appeals from these judgments.

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001) ("*Buckhannon*"), the Supreme Court denied fees to a party whose claim was mooted by intervening legislation. The Court held that a plaintiff is not a "prevailing party" under a fee-shifting statute simply by virtue of having "acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by judicial relief." *Id.* at 606; *see also Hewitt v. Helms*, 482 U.S. 755, 760 (1987). In our view, the Court's judgment and reasoning in *Buckhannon* make it clear that appellees are not "prevailing parties" under EAJA. We therefore reverse the judgments of the District Court.

## I. BACKGROUND

Many of the details relating to the underlying litigation in this case are set forth in *Thomas II*, 176 F.3d at 502-06. Our

statement of the facts will therefore focus primarily on the matters related to this appeal.

NSF is an independent federal agency whose authority extends to "coordinating and funding the management of the nonmilitary portion of the Internet infrastructure." *Id.* at 504. In 1993, NSF signed a Cooperative Agreement with NSI. The agreement called for NSI to design and manage a system for individuals and companies to register their Internet domain names. In addition, NSF agreed to compensate NSI for the costs of offering this service to the public and to provide the company an additional fixed fee for each completed domain name registration.

In 1995, NSF and NSI amended their Cooperative Agreement. Under the revised arrangement, the cost of an Internet domain name would be $100 for new registrations and $50 for yearly renewals. The amended contract allotted 70% of the fees to NSI as consideration for the services provided, with the remaining 30% to be deposited in the Intellectual Infrastructure Fund for future Government use in connection with Internet projects. The fee arrangement under the revised Cooperative Agreement was adopted by NSF and NSI without prior authorizing legislation from Congress.

In October, 1997, appellees, various parties who had paid the Internet registration fees, filed a civil lawsuit against NSF and NSI in the District Court. They claimed that NSF's share of the registration fees (the so-called "Preservation Assessment") was an unconstitutional tax, because Congress never authorized the agency to collect and deposit monies into the Fund. Appellees sought an injunction barring NSF from collecting any further fees or spending any monies in the Fund and a refund of the money that had been deposited in the Fund. Shortly after appellees filed suit, the District Court issued a limited preliminary injunction preventing NSF from "crediting, spending, obligating or using any of the money collected for, placed into, or taken from" the Fund pending final adjudication of the case. *Injunction Order*, App. 83.

On April 6, 1998, the District Court dismissed all counts of the Amended Complaint, except Count One; granted a partial summary judgment in favor of appellees against NSF on Count One of the Amended Complaint; and dismissed NSI from the case. *SJ Decision*, 2 F. Supp. 2d at 25; *Dismissal Order* at 2, App. 85. The District Court held that "there is no dispute that the Preservation Assessment exists to generate revenue for public projects and goals, or that it is a fee imposed independent of and above the cost of domain name registration." *SJ Decision*, 2 F. Supp. 2d at 30. Since the 1995 amendment to the Cooperative Agreement had neither been reviewed nor ratified by Congress, the District Court reasoned, NSF's collection of the assessment was an unapproved "tax" in violation of Article I, Section 8 of the Constitution. *Id.* at 33.

Before the District Court entered final judgment or addressed appellees' claims for relief, Congress passed and the President signed into law Section 8003 of the Fiscal Year 1998 Supplemental Appropriations and Recissions Act:

> RATIFICATION OF INTERNET INTELLECTUAL INFRASTRUCTURE FEE. (a) The 30 percent portion of the fee charged by Network Solutions, Inc., between September 14, 1995 and March 31, 1998, for registration and renewal of an Internet second-level domain name, which portion was to be expended for the preservation and enhancement of the intellectual infrastructure of the Internet under a cooperative agreement with the National Science Foundation . . . is hereby legalized and ratified and confirmed fully as to all intents and purpose as if the same had, by prior Act of Congress, been specifically authorized and directed.

Pub. L. No. 105-174, 112 Stat. 58, 93. This statutory provision had the clear purpose and effect of legalizing and ratifying NSF's Preservation Assessment scheme.

Following enactment of § 8003, NSF filed a motion to vacate the preliminary injunction and dismiss the case as moot. On August 28, 2000, the District Court concluded that

Section 8003 was "sufficient to effect a valid ratification of the [Preservation Assessment]." *Dismissal Order* at 13, App. 96; *see also U.S. v. Heinszen & Co.,* 206 U.S. 370, 384 (1907) (recognizing congressional power to ratify tax retroactively). Finding no other legal impediment preventing NSF from imposing the Preservation Assessment on new registrants or from using the funds already collected, the District Court granted NSF's motion. *Dismissal Order* at 15, App. 98. This court affirmed the judgment of the District Court, *see Thomas II*, 176 F.3d at 512, and the Supreme Court denied appellees' petition for *certiorari, see Thomas v. Network Solutions, Inc.*, 528 U.S. 1115 (2000).

On February 17, 2000, appellees filed a motion in District Court seeking an award of attorney's fees and costs under EAJA. *See* Plaintiffs' Application in Support of Motion for Award of Attorney's Fees and Costs ("Fee Motion"), *reprinted in* App. 99-276. EAJA provides that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Appellees cited three reasons to support their claim as "prevailing parties" under EAJA: (1) the District Court's preliminary injunction "prohibiting [NSF's] dissipation of the tens of millions of dollars in unlawful taxes they exacted"; (2) the court's partial summary judgment on "the 'central issue' in the litigation"; and (3) the fact that the lawsuit was the catalyst for NSF to "do away with the Preservation Assessment collections altogether." Fee Motion at 20, App. 120. In opposition to the motion, NSF argued that appellees were "not 'prevailing parties' for purposes of EAJA, and their claim fails on that basis alone." *See* Defendant NSF's Opp. to Plaintiffs' Motion for Award of Attorneys' Fees and Costs at 3 ("NSF Opposition"), *reprinted in* App. 279. NSF also argued that appellees could not

prevail under EAJA because NSF's legal position in the case was "substantially justified." *Id.* at 13-21, App. 289-97.

The District Court concluded that a fee award for appellees was appropriate under EAJA. The court rejected the "catalyst theory" as a basis for fees, but found that the preliminary injunction and partial summary judgment were sufficient to make appellees "prevailing parties." *Fee Decision* at 15-17, App. 412-14. While the District Court was considering supplemental pleadings to determine the exact amount of money that appellees were due, the Supreme Court decided *Buckhannon*. There, the Court rejected a fee request pursuant to the Fair Housing Amendments Act and the Americans with Disabilities Act where the underlying lawsuit became moot when the state passed legislation to resolve the case. 532 U.S. at 601-02.

NSF then filed a "Notice of Filing" with the District Court on June 13, 2001, suggesting that *Buckhannon* was relevant to the legal construction of the term "prevailing parties" in fee-shifting statutes. The District Court held to its position that appellees had "prevailed," stating that the decision in *Buckhannon* was largely inapposite to the present case:

> [W]hile *Buckhannon* may bolster this Court's prior rejection of Plaintiff's catalyst theories by providing a wholly new basis for doing so, the Court can find nothing in *Buckhannon* and its limited progeny thus far necessitating a different result; the preliminary injunction and summary judgment awarded to [appellees] certainly constitute a 'judicial imprimatur,' and there was nothing 'voluntary' about [NSF]'s compelled compliance with such ordered relief.

*Fee Award* at 2 n.1, App. 552. The District Court then awarded $268,070 in attorney's fees and $38,585 in costs to appellees. *Id.* at 7, App. 557. NSF then filed a Notice of Appeal with this court.

## II. DISCUSSION

NSF claims that the District Court committed legal error in construing EAJA's "prevailing party" requirement. We

review this claim *de novo*. *See Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 599 (D.C. Cir. 1998) ("[W]e review an award [under EAJA] *de novo* insofar as it rests on conclusions of law, such as an interpretation of the statutory terms that define eligibility for an award.") (citation omitted). NSF asks this court to reverse the award of fees and costs awarded to appellees, because they are not eligible "prevailing parties" under EAJA.

*A. Appellees' Forfeiture Claim*

Before addressing the merits of NSF's appeal, we must first consider whether NSF's claim that appellees are not "prevailing parties" under EAJA is properly before this court. Appellees contend that we should dismiss the appeal, because NSF never argued before the District Court that appellees were not "prevailing parties." Br. of Appellees at 18-21. Thus, according to appellees, this claim has been forfeited. We disagree.

We need not dwell long on this issue, because NSF's reply brief to this court convincingly refutes appellees' claim:

> [T]he issue of "prevailing party" status *was* raised by NSF below. Although NSF's opposition to plaintiffs' motion for attorney's fees concentrated on the issue of substantial justification, the opposition preliminarily stated that "[p]laintiffs are . . . not 'prevailing parties' for purposes of EAJA, and their claim fails on that basis alone." Def. NSF's Opp'n to Pls.' Mot. for Award of Atty's Fees and Costs at 3 (App. 279). NSF argued that the district court's "April 6th ruling was not merged into any final judgment, and the 'unconstitutional tax' issue was never litigated to finality," depriving it of the opportunity to "exercise the right enjoyed by 'non-prevailing' parties to appeal." *Id.* at 1 (App. 277).
>
> NSF also subsequently filed a "Notice of Filing" with the district court, noting that *Buckhannon* " 'bears upon the construction of "prevailing party" for purposes of attorney fee-shifting statutes.' " See Dis. Ct. Op. (Mar. 22, 2002) at 2 n.1 (App. 552).

> Indeed, the district court specifically addressed and decided the issue of "prevailing party" status in its opinion, holding that "the preliminary injunction and summary judgment awarded to Plaintiffs certainly constitute a 'judicial *imprimatur*,' and there was nothing 'voluntary' about Defendants' compelled compliance with such ordered relief." *Ibid.*

Reply Br. of Appellant at 7-8.

In short, the record is clear that NSF raised the "prevailing party" issue with the District Court, the District Court addressed the issue, and NSF preserved the issue in its appeal to this court. Accordingly, we reject the contention that NSF forfeited its right to challenge appellees' prevailing party status on appeal.

*B. The Merits*

The central issue in this case is whether, in light of *Buckhannon* and *Hewitt*, the District Court erred in holding that the vacated preliminary injunction and partial summary judgment were sufficient to make appellees eligible for attorney's fees under the EAJA.

The District Court found *Buckhannon* to be inapposite, because, in the trial court's view, the principal thrust of *Buckhannon* is the Supreme Court's judgment rejecting the "catalyst theory." The plaintiff's argument for fees in *Buckhannon* rested on the theory that the lawsuit led the state to adopt intervening legislation that ultimately resolved the legal dispute. The Court held that the litigant was not a "prevailing party," because the lawsuit was resolved by virtue of what the defendant did, not what the court ordered. In other words, the enactment of the legislation "lack[ed] the necessary judicial *imprimatur*." 532 U.S. at 605. Seizing on this language, the District Court determined that its vacated rulings bore the requisite judicial *imprimatur* and concluded that this factual distinction limited the applicability of *Buckhannon* to the present case. *Fee Award* at 2 n.1, App. 552. This view of *Buckhannon* is much too narrow.

*Buckhannon* is, first and foremost, about the meaning of the term "prevailing party" in civil litigation under certain fee-shifting statutes.[1]  The first two sentences of the majority opinion for the Court make this clear:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.

532 U.S. at 600.  In addressing this issue, *Buckhannon* embraces three core principles that form the basis for the Court's construction of "prevailing parties" under a fee-shifting statute.  First, in order to be a "prevailing party," a claimant must show that there has been "a court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'"  *Id.* at 604 (citing *Texas State Teachers Ass'n. v. Garland Indep. School Dist.*, 489 U.S. 782, 792 (1989) (citing *Hewitt*, 482 U.S. at 760-761, and *Rhodes v. Stewart*, 488 U.S. 1, 3-4 (1988))) (alterations in original).  Second,

> the term "prevailing party[ ]" [is] a legal term of art.  Black's Law Dictionary 1145 (7th ed.1999) defines

---

[1] In *Oil, Chemical & Atomic Workers International Union v. Department of Energy*, we held that "eligibility for an award of attorney's fees [under one statute] should be treated the same as eligibility determinations made under other fee-shifting statutes *unless there is some good reason* for doing otherwise."  288 F.3d 452, 455 (D.C. Cir. 2002) (emphasis added).  Appellants have offered no reason to treat eligibility under the EAJA differently from eligibility under other fee-shifting statutes, including the statutes at issue in *Buckhannon*.  Like the other circuits that have considered the issue, we therefore hold that *Buckhannon* applies to the definition of "prevailing party" under the EAJA.  *See Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1379 (Fed. Cir. 2002); *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002).

> "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>. – Also termed *successful party*." This view that a "prevailing party" is one who has been awarded some relief by the court can be distilled from our prior cases.

532 U.S. at 603 (footnote omitted). Third, a claimant is not a "prevailing party" merely by virtue of having "acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by '*judicial* relief.'" *Id.* at 606 (citing *Hewitt*, 482 U.S. at 760) (emphasis added).[2]

These principles underscore the Court's judgment in *Buckhannon* rejecting the "catalyst theory," but they also establish a framework for construing and applying the "prevailing party" requirement more broadly. In applying these principles to the instant case, it is clear that appellees are not "prevailing parties" under EAJA, for neither the preliminary injunction nor the partial summary judgment changed the legal relationship between appellees and NSF in a way that afforded appellees the relief that they sought.

As appellees concede, the sole effect of the preliminary injunction was to prevent NSF from appropriating any money already collected from the registration assessment. In other words, the relief merely preserved the *status quo* pending final adjudication of the case. And upon granting NSF's motion to dismiss the case, the District Court vacated the preliminary injunction. In short, the preliminary injunction did not change the legal relationship between the parties in a way that afforded appellees the relief they sought in their lawsuit.

The facts in this case are easily distinguishable from cases in which we have found that "the subsequent mootness of the

---

[2] We do not address here the application of *Buckhannon* to administrative proceedings provided for by certain statutes. *See Moore v. District of Columbia*, 907 F.2d 165 (D.C. Cir. 1990).

case [did not] necessarily alter the plaintiffs' status as prevailing parties." *Nat'l Black Police Ass'n v. D.C. Bd. of Elections,* 168 F.3d 525, 528 (D.C. Cir. 1999); *Grano v. Barry*, 783 F.2d 1104, 1108-09 (D.C. Cir. 1986). The specific relief granted in those cases was concrete and could not be reversed despite a subsequent finding of mootness. In *Grano*, for example, plaintiffs sought and won an injunction to delay the demolition of a historical site until a public referendum was held. 783 F.3d at 1108. That reprieve was unchanged when the case was later declared moot, because the referendum in question had already occurred. The injunction produced a lasting change in the parties' legal circumstances and gave the plaintiffs the precise relief that they had sought. That is not the case here. Appellees filed a lawsuit in order to obtain a refund from NSF, but the preliminary injunction did nothing to vindicate that claim.

Appellees' claim fares no better with respect to the partial summary judgment. That order merely declared that the disputed Preservation Assessment was an unconstitutional tax. The partial summary judgment did not afford appellees any concrete relief, beyond this mere legal declaration. As noted above, *Buckhannon* and *Hewitt* make it clear that a mere "judicial pronouncement that the defendant has violated the Constitution," unaccompanied by "*judicial* relief," is not sufficient to make a claimant a "prevailing party." *Buckhannon*, 532 U.S. at 606; *Hewitt*, 482 U.S. at 761. This type of "judicial decree" is not enough to warrant a fee award, because it represents "not the end but the means" of the litigation. *Hewitt,* 482 U.S. at 761. A declaration must require "some action (or cessation of action) by the defendant that the judgment produces – the payment of damages, or specific performance or the termination of some conduct." *Id.* The partial summary judgment in this case did not achieve any such results.

In sum, neither the vacated preliminary injunction nor the vacated partial summary judgment can justify an award of fees in this case.

### **III.** CONCLUSION

For the reasons given above, the judgments of the District Court in favor of appellees are hereby reversed and the case is dismissed.