**LAKE PILOTS ASSOCIATION, INC., Plaintiff,**

v.

**UNITED STATES COAST GUARD, et. al., Defendants.**

Civil Action No. 1:01CV01721 (RBW).

United States District Court, District of Columbia.

March 31, 2004.

Katherine Street Nucci, Michael G. Roberts, Thompson Coburn, LLP, Washington, DC, for Plaintiff.

Michael Anthony Humphreys, Sherri Evans Harris, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter is before the Court on plaintiff's motion for attorney fees for services rendered in connection with the award of a partial judgment it obtained.[1] Upon considering plaintiff's motion, defendants' opposition, and plaintiff's reply, the Court concludes that plaintiff is entitled to an award of reasonable attorney's fees. However, because plaintiff failed to carry its burden with respect to the full amount for

which it seeks reimbursement, the Court will reduce the amount of fees awarded.

### I. Is Plaintiff Entitled to an Award of Attorney's Fees?

Plaintiff moves for an award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). The EAJA provides in pertinent part,

> [A] court *shall* award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* § 2412(d)(1)(A) (emphasis added). Defendants oppose any award, contending that plaintiff is not a prevailing party because it did not receive a favorable ruling within the meaning of the EAJA. Defendants' Opposition to Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act ("Defs.' Opp'n") at 1–2. Further, defendants argue that even if plaintiff is a "prevailing party," their position was "substantially justified," precluding an award in any event pursuant to the EAJA. *Id.* Finally, even a fee award is warranted, the defendants argue that plaintiff's request is excessive and should be reduced accordingly.[2] *Id.* The Court will address each of the defendants' arguments in turn.

---

1. The ruling was appealed, however, the District of Columbia Circuit held that it did not have jurisdiction to entertain the appeal and it was dismissed. *Lakes Pilots Assoc. v. United States Coast Guard*, 359 F.3d 624 (D.C.Cir. 2004). The Court of Appeals reasoned that remands by a district court to an agency are generally not final decisions subject to appellate review because the "agency adversary," here Lake Pilot, will be able "to seek judicial review [later], including review in the court of

appeals ..." if it is still aggrieved by the outcome following the remand. *Id.* at 625.

2. Defendants also argue that plaintiff's petition for EAJA fees lacks any statement that plaintiff meets the statutory definition of a party eligible to receive an award. Defs.' Opp'n at 5 n. 3. In Plaintiff's Reply in Support of Motion for Attorney's Fees ("Pl.'s Reply"), plaintiff addresses the issue and fulfills the statutory requirement of 28 U.S.C.

## A. Whether Plaintiff is a Prevailing Party

A recent Circuit opinion casts light on the meaning of the term "prevailing party" as the term relates to the EAJA. To be a prevailing party, a party must obtain a "substantial part of" the relief it sought and the lawsuit must have caused "a change in someone's primary conduct in the real world." *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 966 (D.C.Cir.2004) (citing *Waterman Steamship Corp. v. Maritime Subsidy Board*, 901 F.2d 1119, 1122 (D.C.Cir.1990)). In *Role Models*, the plaintiff ("Role Models") sued the United States Army for violating regulations that required the Army to provide adequate notice prior to selling a military base, which prevented Role Models from competing for the purchase of the property at issue in that case. *Id.* at 965. Role Models ultimately secured a ruling from the Court of Appeals that the Army violated the clear text of the relevant regulations, which resulted in the issuance of an injunction prohibiting the transfer of the property until the defendant complied with its notice obligation. *Id.* Role Models then sought an award of attorney's fees and the defendant objected, claiming that Role Models was not a prevailing party because it had not actually acquired the property that it sought (the property that was the subject of the injunction). *Id.* However, the Circuit Court held that Role Models was a prevailing party under the EAJA because it had received the precise relief it sought, namely, an injunction barring the Army from transferring the property and an opportunity to compete for its purchase. *Id.* at 966. Further, the Court noted that the lawsuit and the relief Role Models obtained caused "a change in [the defendant's] primary conduct in the real world ..." and accordingly, Role Models was a prevailing party under the EAJA. *Id.*

Here, plaintiff filed a complaint and a motion for a temporary restraining order to enjoin the Coast Guard from implementing its Final Rule. *Lake Pilots Assoc. v. United States Coast Guard*, 257 F.Supp.2d 148, 153 (D.D.C.2003). Plaintiff challenged four aspects of the Final Rule, alleging that the Coast Guard misapplied the relevant formula in setting rate ceilings for pilotage services in the Final Rule the Coast Guard had adopted. First, plaintiff alleged that the Coast Guard's exclusion of detention and delay hours from the calculation regarding the number of pilots needed in District Two of the Great Lakes was arbitrary and capricious. *Id.* at 159. The Court found that this issue was not ripe for adjudication because the Coast Guard had not yet taken a definitive position to treat the several districts of the Great Lakes differently or to exclude such hours in all districts as a matter of policy. *Id.* at 160. Second, the plaintiff challenged the Coast Guard's determination regarding target pilot compensation, specifically its reliance on a ship operating company's figures and that the Coast Guard's failure to apply the 150% multiplier for determining the target rate of compensation of first mates. *Id.* at 165, 168. The Court found that

> [g]iven the defendants' failure to adhere to the language of its own regulations, provide notice to interested parties regarding the alternative source of data it would use [—a ship operating company's

§ 2412(d)(2)(B), by stating that it is a corporation with less than 500 employees with a net worth of less than $7 million. Pl.'s Reply at 1 n. 1. This is sufficient. *See United States v. An Undetermined Number of Defendants,*

869 F.Supp. 906, 910 (D.Kan.1994) (allowing the plaintiff to fulfill the requirements of 28 U.S.C. § 2412(d)(2)(B) in its reply memorandum).

costs—], or to provide in the administrative record any justification for its reliance on the figures it used to make its calculation ... [defendants' reliance on the ship operating company's figures was arbitrary and capricious].

*Id.* at 168. However, regarding the second aspect of this challenge, the Court upheld the defendants' decision not to apply the 150% multiplier, holding that the justification for the formula used was reasonable. *Id.* at 169.[3] Third, the plaintiff argued that the Final Rule was arbitrary and capricious because it disregarded the regulation's requirement that cash be included when calculating the plaintiff's investment base. *Id.* at 172. The Court held that the manner used to calculate the investment base was arbitrary and capricious because the defendants ignored the language of the regulation. *Id.* Fourth, plaintiff challenged the denial of certain subsistence expenses by the Coast Guard during its rulemaking process. *Id.* at 174. Because the defendants conceded that they may have incorrectly disallowed some of the plaintiff's subsistence expenses, the Court remanded the case to the Coast Guard to reconsider its calculations of the plaintiffs actual subsistence expenses plaintiff was entitled to claim. *Id.*

■ The fact that plaintiff was only successful on two of the five challenges, resulting in the Court granting partial summary judgment to the defendants, does not alter the fact that plaintiff received the precise relief it sought, *i.e.*, a remand of the Final Rule to the Coast Guard to recalculate the pilotage rates in a manner consistent with the applicable regulations. *Id.* at 153. In *Kennecott Corp. v. EPA,* 804 F.2d 763, 764 (D.C.Cir.1986), the Court held that the petitioners were prevailing parties entitled to attorney's fees despite being only partially successful in their challenge to the agency's regulations. There, the Court ruled in favor of the petitioners on two of the three claims brought against the agency but entered judgment in favor of the defendant agency on the third claim. *Id.* Similar to *Kennecott,* in this case the Court concludes plaintiff received a substantial part of the relief it sought.

Through the lawsuit and the relief it obtained, plaintiff caused a change in defendants' primary conduct in the real world, satisfying the second "prevailing party" requirement. *Role Models,* 353 F.3d at 966. As already noted, in *Role Models,* the Court ordered the district court to issue an injunction to stop the transfer of the disputed property until proper notice of the property's availability for sale was provided, which the Court concluded changed the agency's primary real world conduct. *Id.* Here, plaintiff changed defendants' real world conduct in several ways. First, the defendants conceded that they learned as a result of this litigation that part of their Final Rule had

---

3. This one challenge asserted two separate bases and the Court found for the plaintiff in part and for the defendants in part, and it will treat the one claim as two separate claims. *See Sierra Club v. EPA,* 769 F.2d 796, 803 (D.C.Cir.1985) ("While all the issues in [this] case arise from the same set of regulations and the same administrative record, we do not believe they are therefore inseparable for the purposes of attorney's fees. Each issue involves a particular substantive concern of the petitioners with a particular aspect of the [defendant agency's] regulation."). Because the challenge to target pilot compensation involved two different particular concerns, i.e., one concerning the defendants' data in computing the target rate of compensation and one for not applying the 150% multiplier, the two claims are separable for attorney's fees. *Lake Pilots,* 257 F.Supp.2d at 167, 169 This brings the total number of challenges to five for the purposes of an attorney's fee award.

been erroneously promulgated, which they then voluntarily altered. Defs.' Opp'n at 2–3 (citing Great Lakes Pilotage Rates, 67 Fed.Reg. 47464 (July 19, 2002)). Further, the Court found that two aspects of the defendants' 2001 Final Rule were arbitrary and capricious and remanded the case back to the agency for proceedings consistent with the Court's opinion. *Lake Pilots*, 257 F.Supp.2d at 175. Thus, the defendants are not free to re-calculate the pilotage rates in any manner they deem appropriate, but must do so in a manner partially consistent with the ruling the plaintiffs encouraged the Court to make.

The defendants argue that plaintiff's lawsuit did not change their real world conduct because they voluntarily issued a temporary Final Rule during the course of the litigation, which afforded the plaintiff the relief it sought: a return to the 1997 rates. Defs.' Opp'n at 2. However, the Court specifically ruled that defendants' voluntary action did not render the plaintiff's complaint moot because the temporary rule was not final and did not absolutely eradicate the potential impact of the defendants' prior decision. *Lake Pilots*, 257 F.Supp.2d at 157–58. The defendants' reliance on *Thomas v. National Science Foundation*, 330 F.3d 486 (D.C.Cir.2003), as support for their position is misplaced, as that case is distinguishable from the current situation. In *Thomas*, the plaintiffs brought an action against a federal agency, the National Science Foundation ("NSF"), alleging that a fee they were charged pursuant to a cooperative agreement constituted an illegal tax. *Id.* at 488. Plaintiffs sought to enjoin the NSF from spending the money and an order requiring it to return the fee. *Id.* The district court granted the plaintiffs' preliminary injunction and partial summary judgment motion, holding that the tax was illegal, but awarded no monetary relief to the plaintiffs. *Id.* Before the district court

entered a final judgment, the President signed into law an act which "legalized and ratified" the fee, rendering the plaintiffs' claims before the district court moot. *Id.* On plaintiffs' motion for attorney's fees, the Court of Appeals held that the plaintiffs were not a "prevailing party" because "the sole effect of the preliminary injunction was to prevent the defendant agency from appropriating any money already collected from the registration assessment. [T]he relief merely preserved the *status quo.*" *Id.* at 493. Therefore, the injunction did nothing to vindicate the plaintiffs' claim and failed to change the material relationship between the parties because it was a "mere legal declaration." *Id.*

The Court finds this case distinguishable from *Thomas* for two reasons. First, the issue in *Thomas* was rendered moot, while here the Court specifically found that the defendants' voluntary actions had not rendered the case moot and entered a partial judgment declaring particular aspects of defendants' Final Rule arbitrary and capricious. *Lake Pilots*, 257 F.Supp.2d at 157. With respect to those portions of the Final Rule declared to be arbitrary and capricious, the Final Rule was remanded to the agency for further proceedings. The Supreme Court made has it clear in that a remand, standing alone, does not preclude a party from achieving prevailing party status. *Shalala v. Schaefer*, 509 U.S. 292, 300–301, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). Rather, the question is whether the plaintiff prevailed on the merits of the challenge. *See Massachusetts Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066, 1068 (D.C.Cir.1985) (holding that the plaintiff had "establish[ed] an entitlement to relief on the merits of the claim ... [and was therefore] entitled to fees even [though it was] remanded to the agency for further action."). As noted above, the Court in *Kennecott*, 804 F.2d at

764, found that the petitioners were entitled to recover attorney's fees despite being only partially successful in challenging EPA regulations. The result in the underlying decision, *Kennecott Corp. v. EPA*, 684 F.2d 1007, 1020 (D.C.Cir.1982), was the Court remanding the regulation back to the agency for reconsideration consistent with its opinion. The remand back to the agency did not alter the Court's conclusion that the petitioners were entitled to attorney's fees. Here, the Court's remand regarding the aspects of the Final Rule determined to be arbitrary and capricious established plaintiff's entitlement to fees. Second, the plaintiffs in *Thomas* were seeking monetary relief and an injunction to preserve the "*status quo.*" Here, plaintiff did not seek monetary relief, but an injunction that would stop the enforcement of a rule it believed was arbitrary and capricious and which had caused the plaintiff pilots to "los[e] ... hundreds of thousands of dollars over the past year in revenues...." *Lake Pilots*, 257 F.Supp.2d at 153–54 (citations omitted). Therefore, the Court's decision was not a "mere legal declaration" preserving the *status quo*, but it materially altered the relationship between the parties. Thus, the Court concludes that plaintiff is a prevailing party within the meaning of the EAJA.

B. *Defendants' Position was not Substantially Justified*

■ The Coast Guard next argues that it need not pay attorney's fees because its position in the underlying litigation was substantially justified. Defs.' Opp'n at 8. The EAJA directs the Court to award attorney fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government has the burden of proving that its position, including both the underlying agency action and

its arguments taken in court in defense of its action, were "substantially justified" within the meaning of the Act. *Halverson v. Slater*, 206 F.3d 1205, 1208 (D.C.Cir. 2000). Government conduct is "substantially justified" where it is 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person. That is no different from ... [having] a reasonable basis both in law and fact." *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). While the legislative history of the EAJA indicates that an "[a]gency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act," H.R.Rep. No. 99–120, at 9–10 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 138, the District of Columbia Circuit has stated that "whether agency action invalidated as arbitrary and capricious might nevertheless have been substantially justified depends on what precisely the court meant by 'arbitrary and capricious.'" *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 596 (D.C.Cir.1996). In *Vollmer*, the Court suggested that a remand to an agency because it had failed to fully explain its reasoning or to consider a relevant factor in reaching a decision might not support a finding that a government's position was not substantially justified. *Id.* However, the *Vollmer* Court indicated that "a finding that an agency acted arbitrarily and capriciously by denying equal treatment to similarly situated parties ... or by failing to enforce a rule where it plainly applied" would be likely to result in a conclusion that the government's position was not substantially justified. *Id.* (citations omitted).

Here, the Court found two aspects of the defendants' Final Rule to be arbitrary and capricious for several reasons, includ-

ing defendants' failure to follow its own regulations. First, the Court addressed the plaintiff's challenge to defendants' determination regarding target pilot compensation. *Lake Pilots,* 257 F.Supp.2d at 165. Plaintiff argued that the defendants relied upon inaccurate data in computing the target rate of compensation for first mates. *Id.* at 166. The Final Rule did not explicitly state upon which contract the defendants relied on and because the defendants asserted for the first time in proceedings before the Court that they relied on the ship operating company's figures. *Id.* at 167–68. The Court found that it could not sanction the Coast Guard's *post hoc* rationalizations and therefore that portion of the Final Rule was arbitrary and capricious. *Id.* However, the agency's failure to fully explain its reasoning was not the only factor behind the Court's determination that the Final Rule was arbitrary and capricious, as the Court also found that the defendants failed to adhere to the language of their own regulations and failed to provide notice to interested parties regarding the alternative source of data they would use in making their calculations. *Id.* at 168. Similarly, the Court agreed with the plaintiff's position that the Final Rule was arbitrary and capricious because it disregarded the regulation's requirement that cash be included when calculating the plaintiff's investment base. *Lake Pilots,* 257 F.Supp.2d at 172. The Court found that the Coast Guard "ignored the language of [its own] regulation [ ]" by excluding cash from the plaintiff's investment base. *Id.* The Court did "not dispute that the defendant may have [had] a legitimate reason for wanting to exclude cash from the [plaintiff's] investment base [, but concluded that] [i]f the defendant intended to modify the regulation as to what constitutes the investment base, then the proper course would have been for it to amend the regulation after providing the appropriate opportunity for notice and comment." *Id.* at 173. Instead, the defendant failed to adhere to the clear language of the regulation and "pointed to nothing in the regulations ... that would justify" its position. *Id.* at 174.

■ The Court in *Role Models* found that the failure of the agency to adhere to the language of the agency's own regulations and failing to provide notice of the agency's intended action to interested parties was unreasonable. 353 F.3d at 968. The Court stated that it "could not imagine how the [defendant] could have viewed [its actions] as satisfying [its] obligations under the regulations." 353 F.3d at 986–69. Thus, the failure to follow the clear text of the regulation resulted in the Court concluding that the agency's action lacked substantial justification because it was "wholly unsupported by the text of the applicable regulations." *Id.* at 967 (citing *Vollmer,* 102 F.3d at 593). The situation here is not a case where the agency simply failed to explain its reasoning or to take into account a relevant factor, but, like the agency in *Role Models,* the agency here failed to comply with its own applicable regulation without justifying why it did so. Therefore, like the Court found in *Role Models,* the defendants' actions here were unreasonable and not substantially justified.

Thus, despite the fact that both plaintiff and defendants were granted partial summary judgment on of their respective summary judgment motions, the Court finds that plaintiff is a "prevailing party" within the meaning of the EAJA because it achieved the precise relief sought and caused a primary change in the defendants' real world conduct. Further, defendants' actions were not substantially justified because, among other things, they ignored the text of their own regulations.

Accordingly, plaintiff may properly recover attorney's fees under the EAJA.

## II. *The Amount of Attorney's Fees Plaintiffs are Entitled to Recover*

■ While courts have considerable discretion regarding the awarding of attorney's fees, *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), courts must "scrutinize the claim with care" when the government is being called upon to pay. *Copeland v. Marshall*, 641 F.2d 880, 888 (D.C.Cir.1980). The plaintiff has the burden of presenting a well-documented request for the fees it is asking the government to pay. *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933; *Kennecott*, 804 F.2d at 767. The most useful starting point for determining whether the amount of attorney's fees being requested is reasonable is to assess the reasonableness of the number of hours expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933; *Murray v. Weinberger*, 741 F.2d 1423, 1427 (D.C.Cir.1984).

### A. *Reasonableness of the Number of Hours for which Compensation is Sought*

Plaintiff seeks reimbursement for 555.5 hours of work for litigation that spanned a twenty month period. Pl.'s Mot., Ex. A–B. Defendants argue that the number of hours for which compensation is requested is unreasonable, and replete with excessive, redundant, and unnecessary charges. Defs.' Opp'n at 14. Courts in this Circuit look to the complexity of the issue litigated to determine the reasonableness of the claim. *See, e.g., American Petroleum Institute*, 72 F.3d at 916; *Barber v. American Security Bank*, No. CIV.A.86–1156, 1989 WL 7339, at *8 (D.D.C.1989) (where legal questions involved were "neither novel nor complex and the factual data was readily ascertainable and easily interpreted for attorneys ... experienced in the field" a reduction in the number of hours requested was warranted).

Defendants argue that the pleadings submitted to the Court could "easily have been completed in 50 hours—an amount in excess of the time the Coast Guard's attorney's spent on th[e] motion practice [in this case]." Defs.' Opp.'n at 15. However, the District of Columbia Circuit has recognized that when, as is the situation here, a party challenges an administrative regulation, the plaintiff has the burden of deciding which provisions to challenge and on what grounds, while the defendants "need only to react to those challenges." *Sierra Club*, 769 F.2d at 807. In *Sierra Club*, the Court found that the regulations involved were "detailed and somewhat complex," making the burden "even more disproportionate." *Id.* The petitioners in *Sierra Club* had successfully sought review of regulations proposed by the EPA and sought reimbursement for 800 hours of legal work. *Id.* at 799, 807. The Court, when addressing the question of reasonableness of the hours for which compensation was sought, considered the "disproportionate burden" placed on the plaintiffs due to the complexity of the regulations under challenge, as was demonstrated by the Court's opinion itself, which "consumed over thirty pages in the *Federal Reporter*." *Id.* at 807. Here, plaintiff faced a similar burden, having to identify the basis for its challenge to the defendants' Final Rule and, similar to *Sierra Club*, this Court's memorandum opinion consumed eighteen pages in the Federal Reporter, indicating the complexity of the issues involved. *Lake Pilots*, 257 F.Supp.2d at 148–175.

■ The Court finds the decision relied on by defendants, *American Petroleum Institute*, 72 F.3d at 916, not to be controlling in this case. In *American Petroleum*

*Institute,* the Court found that the plaintiffs had carried their burden of persuasion as to only seventy-five percent of the 550 hours they sought reimbursement for and reduced the billing by one-fourth. *Id.* However, the *American Petroleum Institute* Court noted that the petitioners there were only required to present a focused challenge to the EPA's authority to promulgate one regulation. *Id.* The Court further stated that "[d]eciding what is a reasonable amount of time to spend on motions is an imprecise undertaking [but must be] [b]ased on the motions filed and our familiarity with the issues of the case...." *Id.* Here, the case involved relatively complex issues and a large agency record. Based on the motions filed and the time the Court dedicated to resolving the parties' issues, the Court finds that the request of approximately 550 hours for work spanning close to two years is reasonable.

B. *The Hourly Rate*

■ Plaintiff seeks compensation at rates above the statutory cap of $ 125, claiming higher rates are warranted because of special factors present in the case. [Plaintiff's] Memorandum in Support of Motion for Attorney's Fees ("Pl.'s Mem.") at 10. The EAJA provides that "attorney fees shall not be awarded in excess of $ 125 per hour unless the court determines that ... a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff bears the burden of demonstrating the reasonableness of each element of the fee request. *American Petroleum Institute,* 72 F.3d at 912 (citing *In re North Bush Fee Application,* 59 F.3d 184, 189 (D.C.Cir.1995) (per curiam)). Here, plaintiff argues that "[b]ecause [it] was required to retain counsel familiar with its industry in order to prosecute its claims,

and because the [plaintiff's] counsel has in fact developed special expertise in maritime industry-specific subjects, this Court should award attorney's fees in excess of the $ 125 per hour statutory rate...." Plaintiff's Reply in Support of Motion for Attorney's Fees ("Pl.'s Reply") at 12. Plaintiff states that it is requesting the market rate for such services, which purportedly is the amount it was actually invoiced and paid to its attorneys. Pl.'s Mem. at 10.

■ The Court rejects plaintiff's argument that "because [its] counsel has in fact developed special expertise in maritime industry-specific subjects," Pl.'s Reply at 12, its counsel's expertise is a special factor warranting a fee increase under the EAJA. The District of Columbia Circuit has "narrowly construed" the provision authorizing increased hourly payment for specialized knowledge. *Truckers United for Safety v. Mead,* 329 F.3d 891, 895 (D.C.Cir.2003) (citations omitted) ("We have ... declined to construe EAJA's fee enhancement provision in a liberal fashion."). Thus, to obtain an enhanced hourly rate a party must "establish[ ] that its counsel possessed 'some distinctive knowledge or specialized skill needful for the litigation in question.'" *Id.* (citing *Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)); *see also Vollmer,* 102 F.3d at 598–99 ("[i]f expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements.").

In *Truckers,* the Court found that "specialized expertise in the safety aspects of the trucking industry" did not constitute a special factor that warranted a fee enhancement under the EAJA. *Id.* The Court reasoned that "nothing in the EAJA or its

legislative history indicates that Congress intended to entitle 'all lawyers practicing administrative law in technical fields' to a fee enhancement [and it therefore,] refused to recognize 'expertise acquired through practice' as a special factor warranting an enhanced fee." *Id.* (citing *Vollmer,* 102 F.3d at 598–599). Here, plaintiff maintains that this case required a "high level of familiarity with the maritime industry, as well as the complex system of regulations and procedure related to that industry." Pl.'s Reply at 12. Like the plaintiff in *Truckers,* plaintiff here argues that counsel has developed "special expertise" in these areas through education, in-house experience and private practice over the past twenty years. Pl.'s Mem at 10. However, this lawsuit, while involving issues specific to maritime law, involved the frequent occurrence of interpreting agency regulations and assessing whether the regulations had been properly applied. While an understanding of terms such as "detention and delay hours" and other technical terms was needed, those terms were defined by the applicable regulations. In light of these considerations, plaintiff has failed to justify a hourly fee enhancement based on counsel's special expertise.

■ Plaintiff also argues that because it "was required to retain counsel familiar with its industry in order to prosecute its claims ... " an enhanced fee award is appropriate. Pl.'s Reply at 12. However, plaintiff does not provide the Court with evidence supporting this request. Evidence supporting a party's request for enhanced rates may come from a party's affidavits or surveys of prevailing market rates. *Role Models,* 353 F.3d at 970. In *American Petroleum Institute,* the Court granted a fee enhancement but did so because the party supported its request with documentation. 72 F.3d at 912. There, the petitioners requested increased hourly

rates based on the market rate for the particular type of work and submitted affidavits and a survey of rates as support for their request. *Id.* The Court concluded that the supporting information submitted by the plaintiffs concerning the rates was central to prove the reasonableness of the rates requested and therefore granted the requested fee enhancement. *Id.* In contrast, the Court in *Role Models* reduced requested rates for non-lawyer expenses and fees because of the failure to provide evidence of the prevailing market rate. 353 F.3d at 970–71. The Court reduced the rate, despite the fact that the amount sought was already below the statutory cap, because of the absence of documentary support, which the Court noted should have been submitted in the form of surveys or affidavits. *Id.* In the current case, plaintiff has provided no support for its request for a fee enhancement. Plaintiff does not explain, other than saying that "counsel [was] familiar with [the] industry," why its chosen counsel can be deemed an expert entitled to an enhanced fee. Plaintiff has not provided affidavits, a rate survey, or any other pertinent information regarding the complexity of the regulations nor the market rate for maritime specialists. Moreover, plaintiff has proffered nothing which demonstrates that there is a paucity of attorneys with maritime expertise, which may have provided support for its position that expertise in the maritime field merits payment above the EAJA's statutory cap. Therefore, the plaintiff has not shouldered its burden to justify payment of an enhanced hourly rate and the Court is unable to grant its request for a fee enhancement for this reason.

The Court will, however, grant the cost of living increase requested by plaintiff. Costs of living increases are routinely approved by the Courts. *See, e.g., Role Models,* 353 F.3d at 969; *Cooper v. United*

*States R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C.Cir.1994) (per curiam); *Jones v. Lujan*, 887 F.2d 1096, 1101 (D.C.Cir.1989). Defendants do not challenge this request and in fact have provided the relevant cost of living increase percentages in their Exhibit A that was submitted with their opposition. Therefore, the Court will grant the cost of living increase for the hours expended in 2001, 158.65 total hours at an EAJA rate of $ 138; in 2002, 338.05 total hours at an hourly EAJA rate of $ 141.25; and in 2003, 58.8 total hours at an EAJA rate of $ 144.63. When calculated collectively, the total amount of the attorney's fee to be awarded to the plaintiff at this juncture equals $ 78,147.52. Plaintiff's Motion for Attorney's Fees ("Pl.'s Mot."), Exhibit ("Ex.") A–B (billing statements from plaintiff's in house and outside counsel); Defs.' Opp'n, Ex. 2.

C. *Whether Plaintiff is Entitled to Recover Attorney's Fees on All its Claims*

Because the plaintiff was not successful on all of its claims, the inquiry into the appropriate fee award does not end once the Court determines the amount of hours and the rate at which plaintiff may be awarded compensation for those hours. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. If a party succeeded on only some of its claims, then the Court must ask whether the claims on which the plaintiff succeeded were "related to the claims upon which the plaintiff was unsuccessful." *Id.* Two cases similar to this one clarify the meaning of "related."

In *Sierra Club*, the Court determined that the petitioners were the prevailing parties under a fee-shifting statute where they had succeeded only on some of the issues they raised. 769 F.2d at 802. The Court held that the petitioners were entitled to only some of the attorney fees they

requested because the unsuccessful claims were unrelated to the successful claims. *Id.* In that case, the petitioners challenged regulations governing two methods the EPA proposed for determining the permissible stack heights for stationary sources under the Clean Air Act. *Id.* Petitioners were partially successful in their request for relief, obtaining relief on seven of the ten aspects of the regulations they challenged. *Id.* at 807. The Court stated that, "[w]hile all the issues in the case are related in the sense that they arise from the same set of regulations and the same administrative record, we do not believe that they are therefore inseparable for the purposes of attorney fees. Each issue involves a particular substantive concern of the petitioners with a particular aspect of [the agency's] regulations." *Id.* at 803. Similarly, in *Kennecott Corp.*, the petitioners challenged EPA regulations on three grounds and were successful on two. 804 F.2d at 765. The Court held that the attorney's fees award would have to be reduced because the issues were separable for the purposes of attorney's fees. *Id.* at 764. While each challenge was related in the sense that they were all directed at the same regulations with the same goal of invalidating them, each ground was predicated on a different substantive basis. *Id.* at 765. Specifically, the petitioners argued that: (1) the EPA's procedural actions in promulgating the regulations were improper; (2) the EPA's regulations concerning a financial test for nonferrous smelter orders eligibility were inconsistent with the statute; and (3) that EPA did not have statutory authority to require a particular treatment for certain sulfur dioxide streams. *Id.* The Court held that since the petitioners were unsuccessful on the third issue, their award of attorney's fees had to be reduced, reasoning that it was "extremely reluctant to award fees for time expended on ... unsuccessfully

raised issues." *Id.* at 766 (quoting *Sierra Club,* 769 F.2d at 802).

█ Although somewhat on point, the Court finds *American Petroleum Institute,* 72 F.3d at 911, distinguishable from this case. In *American Petroleum Institute,* the Court concluded that there were no "separate claims" but only separate arguments in support of the same claim. 72 F.3d at 912. However, in *American Petroleum Institute,* the petitioners argued that the challenged regulations were invalid on five grounds but the Court only considered one as the basis for granting them relief. 72 F.3d at 911. Here, while the relief sought as to all of the claims was identical—recalculation of the rates pilots are entitled to receive—the basis for each of the claims was premised on different factors. Because the alternative claims could have been brought in separate lawsuits, they are separate and distinct. Thus, as the Supreme Court concluded in *Hensley*

> work on ... unsuccessful claim[s] cannot be deemed to have been 'expended in pursuit of the ultimate result achieved....' The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fees may be awarded for services on the unsuccessful claim[s].

461 U.S. at 435, 103 S.Ct. 1933. Accordingly, plaintiff is entitled to the fees requested that correlate with the claims on which it was successful within the meaning of the EAJA.

█ Here, while plaintiff's challenge involved the same regulation and sought the same form of relief, each argument was substantively different as to merit separate claims. In its motion for summary judgment, plaintiff argued that the Coast Guard committed errors in four main areas

when promulgating its Final Rule. *Lake Pilots,* 257 F.Supp.2d at 165. As in *Sierra Club* and *Kennecott,* each issue involved a particular substantive concern involving distinctly different facts and arguments challenging a particular aspect of the Coast Guard's Final Rule. Therefore, each of the claims is distinct and separable for the purpose of awarding attorney's fees. The Court reached the merits on three of the plaintiff's five challenges to the Final Rule, deciding favorably for the plaintiff on two and favorably for the defendants on one. *Id.* at 165–67, 169. The Court did not reach the merits on the two remaining claims, deciding one challenge was not ripe for adjudication and remanding the other based on the voluntary concession by the defendant of a potential error it committed. *Id.* at 160, 174. A party is not considered a "prevailing party" on a claim that is not ripe for adjudication, so plaintiff cannot recover on that claim. *See Public Citizen Health Research Group v. Young,* 700 F.Supp. 581, 584 (D.D.C.1988) (stating that plaintiffs did not prevail on an issue that was held not to be ripe for a decision). Whether plaintiff may recover attorney's fees regarding the issue on which defendants conceded a potential error they may have committed warrants closer examination.

█ As noted above, the Supreme Court has made it clear that a remand, standing alone, does not preclude a party from recovering attorney's fees as the prevailing party. *Schaefer,* 509 U.S. at 300–301, 113 S.Ct. 2625. Rather, the question turns on whether the merits of the claim were reached. In *Massachusetts Fair Share,* 776 F.2d at 1068, the Circuit Court stated that if a party "establish[ed] an entitlement to relief on the merits of the claim ... [it] is entitled to fees even if it is remanded to the agency for further action." In that case, the Court determined

that since the plaintiff had prevailed on every issue the Court decided, the plaintiff was entitled to an award of attorney's fees under the EAJA despite the remand of the case back to the agency for further proceedings. *Id.* at 1067. The issues before the Court concerned the defendant agency's unilateral revocation of a conditional funding grant to plaintiff without the consent of a second agency that had jointly created the grant program with the defendant agency. *Id.* The Court reversed the action of the defendant agency on the merits, but because the Court itself could not award a grant, it remanded the case back to the agency for proceedings consistent with the Court's opinion. *Id.* The only options the defendant agency had were to award the grant to the plaintiff or to convince the third party agency to agree to revoke the grant. *Id.* at 1068. The Court rejected the defendant agency's argument that the plaintiff was not entitled to attorney's fees as the prevailing party because the Court remanded the case rather than entering a final judgment. *Id.* at 1067. The Court reasoned that because the plaintiff had prevailed on every issue the Court addressed and the Court had limited the options the agency could take during the remand proceedings, the plaintiff was entitled to recover attorney's fees. *Id.* at 1068. Here, the Coast Guard conceded potential error in excluding some of plain-

tiff's subsistence expenses in calculating the pilotage rates. *Lake Pilots,* 257 F.Supp.2d at 175. Thus, the question becomes whether the remand to the Coast Guard for it to reevaluate whether it inappropriately excluded some of plaintiff's subsistence expenses qualifies plaintiff as the prevailing party. The Court finds that they do not. Unlike in *Massachusetts Fair Share,* the Court here found that judicial review of the issue was not appropriate at the time and therefore declined to reach the merits of the claim. While the Court hinted that the defendant's "no harm, no foul" argument would not survive judicial scrutiny, unlike the Court in *Massachusetts Fair Share,* the Court here did not place any restrictions on the Coast Guard's outcome on remand as to this issue. *Id.* Therefore, the Court finds that because the merits were not reached on the challenge regarding the denial of some of plaintiff's subsistence expenses, the plaintiff is not entitled to recover attorney's fees at this time on this claim.[4]

■■■ Having determining that plaintiff is only entitled to a portion of the relief it is requesting leaves for the Court's resolution the issue of whether plaintiff's fee application is sufficiently documented to make such an award. The invoices submitted by plaintiff do not separate the attorney fees on a claim by claim basis. It

---

4. While plaintiff's lawsuit caused the defendants to concede a potential error which would have otherwise gone unnoticed, this is insufficient to confer prevailing party status. *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 610, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In *Buckhannon,* the Supreme Court specifically rejected the plaintiffs argument that because their lawsuit had brought about a voluntary change in the conduct of the defendant, they were prevailing parties and thus entitled to recover attorney's fees. *Id.* at 601, 610, 121 S.Ct. 1835. The Court found that the "catalyst

theory," which posits that a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct, was an inadequate basis to confer prevailing party status. *Id.* Rather, the Court concluded that the term referred to a party who has received a judgment on the merits or a court-ordered consent decree. *Id.* at 603–04, 121 S.Ct. 1835 (citations omitted). Here, since the plaintiff did not receive a judgement on the merits or a court-ordered consent decree on this claim, plaintiff is not a prevailing party regarding its challenge to the denial of some of its subsistence expenses.

is therefore impossible to determine from the information provided how much time was spent on each issue. Pl.'s Mot., Ex. A. In *Kennecott,* the Court held that in such situations it is appropriate to mechanically reduce the amount of attorney's fees awarded based on the percentage of the claims upon which a party has prevailed to reach an equitable award. 804 F.2d at 767. In that case, because the petitioners were successful on two of the three claims they brought, the Court concluded it was appropriate to reduce the total attorney fee award by one-third. *Id.* at 766. This is the same approach this Court will follow. Therefore, since plaintiff was successful on two of the five arguments it advanced, the Court will reduce the attorney's fees requested proportionately.

Plaintiff also requests reimbursement for all expenses it incurred because they are "of the kind billed by attorney's as attorney's fees." Pl.'s Reply at 14. The requests includes reimbursement for telephone charges, postage, telecopier expenses, copy charges, courier charges, taxi charges, internet research charges, meal expenses, filing fees and travel expenses. Pl.'s Mot., Ex. A. Of these items, Courts in this Circuit have only held reimbursable under the EAJA expenses for duplication, on-line legal research fees, and filing fees. *Role Models,* 353 F.3d at 974; *Mass. Fair Share,* 776 F.2d at 1070; *see also Action on Smoking & Health v. C.A.B.,* 724 F.2d 211, 223–24 (D.C.Cir.1984) (taxi fares and postage are non-refundable); *Nat'l Assoc. of Manufacturers v. U.S. Dept. of Labor,* 962 F.Supp. 191, 199 (D.D.C.1997) (prevailing party entitled to recover photocopying, on-line legal research, and initial filing fees); *Chen v. Slattery,* 842 F.Supp. 597, 600 (D.D.C.1994) (only expenses for photocopying and filing are recoverable); *NAACP v. Donovan,* 554 F.Supp. 715, 719–720 (D.D.C.1982) (meals, telephone bills, and travel are not refundable).

Therefore, the Court will exclude all non-reimbursable categories and award expenses only for telecopying ($237), copying ($689.96), computer research charges ($937.86), and the filing fee ($150), which total $2,014.82. *See* Pl.'s Mot., Ex. A.

### III. *Conclusion*

Plaintiff is a prevailing party under the EAJA and defendant's positions regarding the issues on which plaintiff prevailed were not substantially justified. However, plaintiff has failed to adequately support its claim for a fee enhancement. In addition, plaintiff failed to document its attorney's fee request on an issue-by-issue basis. Nonetheless, since the Court concludes that plaintiff was successful on two of the claims it raised, it will reimburse plaintiff for its attorney's fees in accordance with the formula sanctioned in *Kennecott,* 804 F.2d at 767. Finally, the Court has reduced plaintiff's request to omit its non-recoverable expenses. Accordingly, the Court will order the defendant to reimburse the plaintiff as follows: forty percent (two-fifths) of the total billable hours, $ 78,147.52, plus expenses totaling $ 2,014.82, for a collective total of $32,064.94. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

### *ORDER*

In accordance with the Court's rulings as expressed in the Memorandum Opinion that accompanies this order, it is hereby

**ORDERED** that Plaintiff's Motion for Attorney's Fees is granted. It is further

**ORDERED** that defendants reimburse plaintiff for its attorney's fees and expenses in the amount of $ 32,064.94.