168 F.3d 525
 335 U.S.App.D.C. 17
 NATIONAL BLACK POLICE ASSOCIATION, et al., Appellees,
v.
DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, et al.,
Appellants.
D.C. Statehood Party, Appellees.
 Nos. 98-7120, 98-7177.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 12, 1999.
Decided March 5, 1999.
 
 Appeals from the United States District Court for the District of Columbia (No. 94cv01476).
 Edward Schwab, Assistant Corporation Counsel, argued the cause for appellants. With him on the briefs were John M. Ferren, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel.
 Thomas J. Judge argued the cause for appellees. With him on the brief were Daniel J. Standish, Lisa A. Burns, Arthur B. Spitzer and Lawrence H. Mirel.
 Before: WILLIAMS, SENTELLE and GARLAND, Circuit Judges.
 Opinion for the court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 The District of Columbia appeals an award of attorney's fees to the National Black Police Association and associated plaintiffs (collectively the "NBPA") who won an injunction against a D.C. citizen initiative capping campaign contributions to candidates for D.C. Mayor, City Council, and Board of Education. In the litigation resulting in the fee award, the district court held that the contribution limits improperly infringed on the free speech of candidates and the free association rights of contributors in violation of the First Amendment. The District argues that the victory won by the plaintiffs was de minimis, and that the more than $619,000 in fees awarded was so disproportionate to the value of the victory, measured in campaign contributions, as to amount to an abuse of discretion. We disagree. First Amendment freedoms are neither so amenable to financial measurement nor so easily discounted as the District would have us believe. For the reasons stated below, we uphold the district court's award of attorney's fees.
 
 I. BACKGROUND
 
 2
 The history of this litigation is recounted in detail in our prior opinion in this case, National Black Police Association v. District of Columbia, 108 F.3d 346, 348-49 (D.C.Cir.1997), and we repeat here only so much as is needed to explain our decision. The citizen initiative, the D.C. Campaign Contributions Limitation Initiative of 1992 ("Initiative 41") (codified at D.C.Code § 1-1441), prohibited contributions of more than $100 to any candidate for Mayor, D.C. Council Chairman, or at-large Council member, and $50 for any ward council member or Board of Education candidate. It also prohibited any contributor from giving more than $600 to all candidates in any election. The overall cap did not apply to contributions made to initiative, referendum or recall measures. D.C. Law 9-204, D.C.Code § 1-1441.1, amended by D.C. Law 11-144, 43 D.C.Reg. 2174 (1996). The initiative, popularly known as Initiative 41, took effect March 17, 1993. In February 1994, less than a year after Initiative 41 passed, Council Member Jack Evans introduced a bill that would have reinstated the campaign limits in place prior to Initiative 41. See Jonetta Rose Barras, Campaign Limits Face Repeal, WASH. TIMES , Mar. 11, 1994, at C6. The proponents of the initiative made it clear that they would again go to the polls to reinstate the contribution limits if the Council passed Evans's legislation. See Statement of Donna F. Edwards, Executive Director, Center for a New Democracy, April 20, 1994, Appendix II at 10. The bill ultimately failed.
 
 
 3
 The appellees, five individual and four organizational plaintiffs, filed suit on July 6, 1994, challenging the campaign finance contribution limits on First and Fifth Amendment grounds, and as a violation of the Home Rule Charter, seeking an injunction against the contribution limits. The district court denied preliminary injunctive relief, and tried the case over a five-day period in February 1996. Prior to trial, Council Member Harold Brazil introduced another bill designed to raise Initiative 41's limits. The Council vote approving the bill came after the close of trial, but before the district court issued its injunction.
 
 
 4
 On March 5, 1996, and again on April 2, 1996, the Council voted in favor of the Brazil bill. On April 18, 1996, Mayor Marion Barry signed the legislation repealing the citizen initiative, and the thirty-day waiting period for congressional review of city ordinances began to run. The District is required to submit Council-enacted laws to Congress for a thirty-day period that excludes Saturdays, Sundays, holidays, and days when Congress is in recess or not in session; a law will only take effect if Congress does not enact a joint resolution of disapproval during the thirty-day period. D.C.Code § 1-233(c)(1) (Supp.1998). The new campaign legislation increased Initiative 41's campaign ceilings so that the limits became $2,000 for mayoral candidates, $1,500 for Council Chairman candidates, $1,000 for at-large Council member candidates, $500 for ward Council member candidates and at large Board of Education candidates, and $200 for ward Board of Education member candidates, and raised the total cap on contributions in a given election to $8,500. D.C. Law 11-144, 43 D.C.Reg. 2174, 2174-75 (1996).
 
 
 5
 On April 19, 1996,[1] the district court issued an injunction on the grounds that the limitations unconstitutionally infringed the free speech rights of candidates and the free association rights of contributors. See National Black Police Ass'n v. District of Columbia Bd. of Elections and Ethics, 924 F.Supp. 270 (D.D.C.1996), judgment vacated, 108 F.3d 346 (D.C.Cir.1997). Fifty-two days later, on June 13, 1996, the new legislation repealing the contribution limits became effective after the thirty-day period for congressional review. The District appealed, initially supporting the initiative as constitutional, then changing its position after the Brazil bill passed and asked that the judgment be vacated as moot. We agreed and the judgment in the case was vacated as moot because the District of Columbia had passed the new ordinance. See National Black Police Ass'n, 108 F.3d at 347-48.
 
 
 6
 On May 27, 1998, the district court issued an order awarding the NBPA $544,325.85 in attorney's fees and $41,327 in costs for litigating the case, and on July 17, 1998, issued an order awarding appellees $31,413.15 in attorney's fees and $2,765.87 in costs for litigating the attorney's fees request. The total of the two awards is $619,831.87. The court held that the plaintiffs/appellees were the prevailing parties despite the eventual mootness of the case because there was an enforceable judgment against the District during the thirty-day congressional review period, which expired June 13, 1996. During that period, it held, the injunction changed the legal relationship of the parties, and contributors were able to make substantial contributions that otherwise would not have been legal.
 
 
 7
 The District now appeals the award of attorney's fees on the grounds that the appellees either were not a prevailing party within the meaning of the statute, or in the alternative that their victory was de minimis, and thus it was an abuse of discretion to award the attorney's fees when the benefit to the plaintiffs was so disproportionate to the fee award. Specifically, they argue that because the injunction was granted against a repealed statute, and the judgment was ultimately vacated, the fact that the appellants did achieve a victory limited to the congressional review period was insufficient to support the award of more than $600,000 in attorney's fees. Finally, they argue that the unfettered exercise of political speech during a period when there were no campaign contribution limits is harmful, and thus weighs in favor of overturning the fee award. We consider these arguments in turn.
 
 II. PREVAILING PARTY
 
 8
 42 U.S.C. § 1988(b) provides: "In any action or proceeding to enforce a provision of section[ ] 1983 ... of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court stated the basic test for prevailing party status in Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).
 
 
 9
 [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.
 
 
 10
 Id. (citations omitted).
 
 
 11
 The District argues that the plaintiffs are not entitled to attorney's fees because their victories are "purely symbolic," technical and de minimis. Initiative 41 had already been repealed when the injunction issued, and the injunction was effective for only 52 days. The fact that a panel of this court has already found the case moot on appeal, they argue, proves that the District had already supplied any relief to which the plaintiffs might be entitled. The District first relies on Rhodes v. Stewart, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988). In Rhodes, two plaintiffs were complaining individually about their treatment in prison and seeking injunctive relief. Before the court entered judgment, one plaintiff had died and the other had been released from prison. Id. at 2, 109 S.Ct. 202. The court denied any award of fees. Id. at 4, 109 S.Ct. 202. The District argues that Rhodes establishes that a plaintiff is not a prevailing party where the litigation becomes moot. But Rhodes is not controlling in the present case. The judgment entered in Rhodes did not alter the relationship between the parties, because no relationship existed. Here, in contrast, the district court specifically found when considering the fee award that its injunction had a real effect on the parties' behavior. The new legislation became effective only after the injunction issued, and during the pendency of the District's appeal.
 
 
 12
 The fact that the case was moot by the time of the appeal does not alter the fact that the injunction altered the legal relationship between the parties when it was issued. The order was not moot when issued, and did not become so for 52 days. Accordingly, the plaintiffs secured a real-world vindication of their First Amendment rights, even if, as it proved, extraneous events would have given them the substantial equivalent 52 days later.[2]
 
 
 13
 As we have long held, the subsequent mootness of a case does not necessarily alter the plaintiffs' status as prevailing parties. In Grano v. Barry, 783 F.2d 1104, 1108-09 (D.C.Cir.1986), the Rhodes Tavern was scheduled to be razed. A group attempted to save the building as a historic building. The group managed to get the issue on the ballot and was granted a preliminary injunction until the election could be held. Id. at 1106-08. Although the case was rendered moot on appeal by the intervening election, we upheld the lower court's subsequent holding that the plaintiffs were prevailing parties for the purposes of § 1988(b) on the basis of their success in obtaining the injunction, which was a major part of the relief they were seeking. Id. at 1108-10.
 
 
 14
 The plaintiffs were the prevailing parties in the litigation at bar. The relief they ultimately won was specifically the relief they requested. In Farrar, the Supreme Court stated that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Farrar, 506 U.S. at 109, 113 S.Ct. 566 (quoting Hensley v. Eckerhart, 461 U.S. 424, 453, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The inquiry focuses on whether "at the time of the judgment or settlement ... [the] actual relief on the merits ... materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 111-12, 113 S.Ct. 566. In this case the district court properly found that the plaintiffs were prevailing parties because at the time judgment was entered, the injunction altered the legal relationship between the parties.
 
 
 15
 The District next argues that a party may prevail and still not be awarded attorney's fees, because in some instances "a technical victory may be so insignificant ... as to be insufficient to support prevailing party status." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). This, it argues, is one of those cases. But for the congressionally-mandated waiting period, the injunction would have been moot before it was issued. The Texas State Teachers Association decision, though cited by the District, in fact supports the award of fees to the NBPA. In that case, the fee petitioners had filed a complaint seeking to enjoin a school district's prohibiting communications between a teachers' association and teachers during the school day and also a regulation prohibiting access to facilities by employee organizations without the approval of a school principal. Although the plaintiffs failed to obtain much of the relief sought, they did succeed in establishing the invalidity of some of the limitations on teacher-to-teacher communications. Id. at 785-86, 109 S.Ct. 1486. In reversing a circuit decision denying plaintiffs' right to a fee award, the Supreme Court held that a judgment vindicating the First Amendment rights of plaintiffs and "material[ly] alter[ing]" a governmental policy limiting those First Amendment rights was not one that could be characterized as "purely technical or de minimis." Id. at 792, 109 S.Ct. 1486. Just so here.
 
 
 16
 We therefore hold that the NBPA is entitled to its fee award under the test laid out by the Supreme Court in Texas State Teachers Association. Here, the plaintiffs received exactly the relief they sought. The District's long-delayed reaction in passing a new provision raising the campaign spending limits, after the case closed in federal court, beat the opinion by only 24 hours, and did not take effect until 52 days after the injunction issued. Moreover, as NBPA notes, it was by no means a foregone conclusion that the new legislation would pass congressional review, or more importantly, that the proponents of Initiative 41 would not reintroduce precisely the same limitations by referendum.
 
 III. REASONABLENESS
 
 17
 Having decided that the NBPA was a prevailing party, we proceed to the reasonableness inquiry. The question we must answer is whether the district court abused its discretion in setting the amount of attorney's fees under 42 U.S.C. § 1988. The District of Columbia argues that the district court did abuse its discretion in awarding $619,831.87 in fees, when the candidates received only a total of $28,883 in contributions during the period in which the injunction was in effect. That amounts to $21.46 in fees for each dollar given. The fees, the District argues, are so incommensurate with the benefit actually achieved as to render the fee award unreasonable. It also argues that the time value of the money may be a more appropriate measure of the victory, and that measure makes its case more powerfully. The best case the NBPA could make, given that the contributions flowed in over time, was that the injunction was valued at $481.38, or the time value of $28,883 at 10 percent for 60 days, a total of $1,287.61 in attorney's fees for each dollar of the value of the injunction.
 
 
 18
 The District also disputes the appellees' suggestion that the injunction had a greater value because it came at a critical time in the election race. The District argues that the record shows that the bulk of the contributions during the injunction period went to established candidates, not to neophytes who truly needed "seed money." Three incumbent candidates received $21,395 of the $25,098 contributed. The remaining money also went to incumbents. The injunction had no nonmonetary value, because the initiative had already been repealed.
 
 
 19
 Both the premises and logic of these arguments are wrongheaded. That the vindicated First Amendment rights of the contributors yielded only a relatively small amount of money in no way reflects the value of those rights to those who exercise them. In Texas State Teachers Association, the Supreme Court did not ask how many teachers took advantage of their First Amendment rights by communicating with their co-workers, nor did the Court seek to evaluate the volume or effectiveness of the speech. The First Amendment rights of the exercisers were intrinsically valuable, and those who vindicated them were entitled to fees without any attempt at quantification. We know of no hierarchy of First Amendment values that would make the rights of the contributors here any less intrinsic than those of the teachers in the Supreme Court case. Likewise, the fact that the contributors chose to exercise their First Amendment rights in favor of established incumbent candidates rather than the neophytes now favored by the appellants makes them no less valuable. Had the plaintiffs sought to enjoin an ordinance prohibiting public gatherings, the vindication of the rights of those who wish to gather would as well have supported counsel fees, whether the meeting was of seven adherents of a particular political viewpoint or seventy times seven.
 
 
 20
 Further, the "time value" argument is without merit. That the contributors, as events unfolded, could have made the contributions after the amendment of the campaign limits is immaterial to the value of the contribution when made. Also, as a matter of hard reality, the plaintiffs could not have known at the time they incurred their legal fees that events would unfold as they did.
 
 
 21
 Finally, the District makes the remarkable argument that "there was danger that harm to the public interests from the injunction outweighed any benefit to the appellees," because without the regulation contributors might abuse their rights. The District actually argues that "even the most fervent advocate of First Amendment rights would have to recognize the danger that a period of unregulated campaign contributions, preceding the known contribution limits of the new law could lead to abuse." We need say little about this argument. Granted, it is frightening that a government in the United States would advance the position that the vindication of First Amendment rights is dangerous because its citizens, unfettered, might abuse those rights. Granted further, we doubt that even the most lukewarm advocate of First Amendment rights, let alone the most fervent, could agree with the District's proposition. Nonetheless, we need discuss it but little because the District, unsurprisingly, offers no authority for the proposition that such a danger can affect the entitlement or calculus of counsel fees under 42 U.S.C. § 1988.
 
 
 22
 As to the length of the injunction, Grano shows that an injunction of limited duration is sufficient to support an award of attorney's fees, even where the case has become moot in the interim. See Grano, 783 F.2d at 1108-09. There we noted that
 
 
 23
 [w]hile it is obvious that a party who succeeds in obtaining a favorable final judgment following a full trial on the merits and exhaustion of all appeals is a prevailing party, it is also clear that a party may be considered to have prevailed even when the legal action stops short of final appellate, or even initial, judgment due to a settlement or intervening mootness.
 
 
 24
 Id. at 1108. Other circuits have reached the same conclusion. See, e.g., Dahlem v. Board of Educ. of Denver Pub. Schs., 901 F.2d 1508, 1512 (10th Cir.1990); Bishop v. Committee on Prof'l Ethics and Conduct of the Iowa State Bar Ass'n, 686 F.2d 1278, 1290-91 (8th Cir.1982); Williams v. Alioto, 625 F.2d 845, 847-48 (9th Cir.1980); Doe v. Marshall, 622 F.2d 118, 119-20 (5th Cir.1980).
 
 
 25
 The Supreme Court in Farrar held that a plaintiff's degree of success is part of the reasonableness calculation when determining attorney's fees under Section 1988. Having carefully considered the District of Columbia's arguments, we hold that the award of fees in this case was reasonable given the plaintiffs' success on the merits.
 
 IV. CONCLUSION
 
 26
 We hold that the district court properly found the plaintiffs to be the prevailing parties in this case. The subsequent mootness of the case does not alter the fact that they were successful in their attempt to enjoin as unconstitutional the campaign spending limits created by Initiative 41. We also hold that the district court did not abuse its discretion in awarding attorney's fees to the plaintiffs, and that it fully explained the award in the memorandum opinion accompanying that award. For the foregoing reasons, the attorney's fees award is affirmed.
 
 
 
 [1]
 The order enjoining enforcement of the campaign contribution limitations in D.C.Code § 1-1441(a) & (b) (Supp.1995) is date-stamped as filed on April 18, and hand-lettered April 19th. The district court docket shows the order as issued on April 19th. Which of the two dates is correct is immaterial to our disposition
 
 
 [2]
 We have no need to consider the merits of plaintiffs' First Amendment claims ourselves. "[O]nce a court has already ruled that the claims are actionable--not just colorable--civil rights claims, the question of whether the party meets the statutory requirement of having prevailed on the basis of 'civil rights' claims has been unequivocally answered." Grano v. Barry, 783 F.2d 1104, 1111 (D.C.Cir.1986)