HENDERSON, Circuit Judge,
dissenting.
As does the majority, I believe that the district court erred by enhancing the attorney’s fee award, made pursuant to the Equal Access to Justice Act (EAJA), see *952 28 U.S.C. § 2412(a) & (d), to Select Milk Producers, Inc., Continental Dairy Products, Inc. and Elite Milk Producers, Inc. (collectively, Milk Producers) based on their counsel’s familiarity with the arcana of the federal milk regulations. See Zuber v. Allen, 396 U.S. 168, 172, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969) (observing “[o]nce again this Court must traverse the labyrinth of the federal milk marketing regulation provisions”); Queensboro Farms Prods., Inc. v. Wickard, 137 F.2d 969, 974 (2d Cir.1943) (“[T]he ‘milk problem’ is exquisitely complicated.”). I would not reach this issue, however, because I believe the district court erred in awarding any attorney’s fees to the Milk Producers. Whether a party can be a “prevailing party” under a fee-shifting statute by obtaining preliminary injunctive relief is one that has divided the circuits — some say yes, some say no. I do not think we need to give a categorical answer to the question — even assuming preliminary injunctive relief can support “prevailing party” status, the Milk Producers do not qualify. Accordingly, because I would reverse the district court’s award, I respectfully dissent.
I.
In various fee-shifting statutes such as the EAJA, the Congress has supplanted the American Rule — requiring a litigant to pay his own way, win or lose — by authorizing the award of fees and costs to the “prevailing party.” See generally Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 260-61 n. 33, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (listing over 25 statutes authorizing attorney’s fees in favor of prevailing party). The circuits that have considered whether this term includes a party that obtains preliminary injunctive relief have, with one exception, used as their polestar the United States Supreme Court’s decision in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep’t of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) [hereinafter Buckhannon ]. Interpreting two similar fee-shifting statutes—section 3613 of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2), and section 12205 of the Americans With Disabilities Act, 42 U.S.C. § 12205 — the Supreme Court rejected the “catalyst theory” under which several circuit courts had concluded that “a plaintiff is a ‘prevailing party’ if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant’s conduct.” [1] Buckhannon, 532 U.S. at 601-02, 121 S.Ct. 1835. The Court first observed that the Congress, in describing the type of litigant eligible for an award, used a term — “prevailing party” — with a well-known legal meaning, i.e., “one who has been awarded some relief by the court.” Id. at 603, 121 S.Ct. 1835. Noting that “ ‘[rjespect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail,’ ” id. (quoting Hewitt v. Helms, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)) (alteration in Buckhannon), it reaffirmed that its earlier holdings had satisfied the test because the plaintiffs in those eases had “received a judgment on *953 the merits” or secured a settlement agreement enforced by a consent decree. Id. at 605, 121 S.Ct. 1835. It also emphasized, however, that it had declined to award fees “where the plaintiff ha[d] ... acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by ‘judicial relief,’ ” id. at 605-06, 121 S.Ct. 1835 (quoting Hewitt, 482 U.S. at 760, 107 S.Ct. 2672) (emphasis in Buckhan-non ), and .had “[n]ever ... awarded attorney’s fees for a nonjudicial alteration of actual circumstances.” Id. at 606, 121 S.Ct. 1835 (internal quotation marks & citation omitted). Regarding a “settlement agreement[ ] enforced through a consent decree,” id. at 604, 121 S.Ct. 1835, the Court explained that it constituted “relief on the merits” because a consent decree is a “ court-ordered ‘chang[e][in] the legal relationship between [the plaintiff] and the defendant.’ ” Id. (quoting Tex. State Teachers Ass’n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); citing Hewitt, 482 U.S. at 760-61, 107 S.Ct. 2672; Rhodes v. Stewart, 488 U.S. 1, 3-4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam)) (alterations in Buckhannon). The “catalyst” party did not meet the test, however, because “[a] defendant’s voluntary change in conduct, although perhaps accomplishing what the plaintiffs sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.” Buckhannon, 532 U.S. at 605, 121 S.Ct. 1835.
While the circuits have had differing views on whether a party can prevail based on preliminary injunctive relief under Buckhannon, compare John T. v. Del. County Intermediate Unit, 318 F.3d 545, 559-60 (3d Cir.2003); Smyth v. Rivero, 282 F.3d 268, 276-77 & n. 9 (4th Cir.), cert. denied, 537 U.S. 825, 123 S.Ct. 112, 154 L.Ed.2d 35 (2002), with Dubuc v. Green Oak Township, 312 F.3d 736, 753-54 & n. 8 (6th Cir.2002); Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir.2002), cert. denied, 538 U.S. 923, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003), no circuit has engaged in robust analysis. Those that have said “no” have concluded that preliminary injunctive relief does not make the recipient a “prevailing party” because the relief is not based solely on the merits of the claifns advanced in the lawsuit. See John T., 318 F.3d at 559-60; Smyth, 282 F.3d at 276-77 & n. 9. The Third Circuit, for example, explained that the preliminary injunction at issue was not “merits-based,” but instead “was designed to maintain the status quo during the course of proceedings.” John T., 318 F.3d at 558-59 (internal quotation marks & citation omitted). Those in the opposing camp, by contrast, have emphasized the specific relief that the preliminary injunction in fact provided. The Ninth Circuit, for example, concluded that the preliminary injunction at issue carried a sufficient “ ‘judicial imprimatur’ ” because “[i]n this case, the County was prohibited from introducing Watson’s report at the termination hearing for one reason and. for one reason only: because Judge Timlin said so.” Watson, 300 F.3d at 1096; of. Dubuc, 312 F.3d at 754 (rejecting fee award based on preliminary injunction because plaintiffs “goal in this suit [was] not' to obtain a temporary certificate of occupancy, which the injunction provided, but to seek damages for alleged violations of [his] constitutional rights”).
For our part, we held last term that the Court in Buckhannon did not simply reject the catalyst theory but established a framework — built on three “core principles” — “for construing and applying the ‘prevailing party' requirement.” Thomas v. Nat’l Sci. Found., 330 F.3d 486, 492-93 (D.C.Cir.2003). The first, and most central, principle is that a litigant must demonstrate “a court-ordered changfe] [in] the legal relationship between [the plaintiff] and the defendant,” Buckhannon, 532 U.S. *954 at 604, 121 S.Ct. 1835 (internal quotation marks & citations omitted), in order to qualify as a “prevailing party” under a fee-shifting statute. See Thomas, 330 F.3d at 492. The second is that “prevailing party” means “ ‘ “[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.” ’ ” Id. at 493 (quoting Buckhannon, 532 U.S. at 603, 121 S.Ct. 1835 (in turn quoting Black’s Law Dictionary 1145 (7th ed.1999))) (alteration in Buckhannon). And the third is that a litigant does not prevail “by virtue of having ‘acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by “judicial relief.” ’ ” Thomas, 330 F.3d at 493 (quoting Buckhannon, 532 U.S. at 606, 121 S.Ct. 1835 (in turn quoting & citing Hewitt, 482 U.S. at 760, 107 S.Ct. 2672)) (emphasis in Buckhannon). In Thomas we concluded that, despite the plaintiffs having obtained a preliminary injunction and a partial grant of summary judgment, they failed to qualify as “prevailing parties” under the EAJA because “neither the preliminary injunction nor the partial summary judgment changed the legal relationship between appellees and [the National Science Foundation (NSF) ] in a way that afforded appellees the relief that they sought.” Thomas, 330 F.3d at 493. The preliminary injunction, which prevented the NSF from “crediting, spending, obligating or using any of the money collected for, placed into, or taken from” a certain government fund, id. at 489 (internal quotation marks & citation omitted), “merely preserved the status quo pending final adjudication of the case” because it “did not change the legal relationship between the parties in a way that afforded appellees the relief they sought in their lawsuit.” Id. at 493. Its “sole effect ... was to prevent NSF from appropriating any money already collected from the registration assessment.” Id. While I have no quarrel with the methodology, I believe the majority misapplies it here.
II.

A. “Court-Ordered Change” in Parties’ Legal Relationship

Distinguishing Thomas, the majority concludes that “there was a court-ordered change in the legal relationship between Milk Producers and the Secretary” because the preliminary injunction “blocked enforcement” of the Secretary’s regulation and, therefore, the Milk Producers never had to “operate under a market regime with a separate price for Class III butterfat.” Maj. Op. at 947. But the injunction here simply served the traditional “limited purpose” of a preliminary injunction, which is to “merely preserve the relative positions of the parties until a trial on the merits can be held.” Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); see Dist. 50, United Mine Workers of Am. v. Int’l Union, United Mine Workers of Am., 412 F.2d 165, 168 (D.C.Cir.1969); see generally 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2947 (2d ed.1992) (“[A] preliminary injunction is an injunction to protect plaintiff from irreparable injury and to preserve the court’s power to render a meaningful decision after a trial on the merits.”) [hereinafter Fedekal Prao-tice and Procedure], Such a preliminary injunction preserves the trial court’s power to adjudicate the underlying dispute by maintaining the status quo ante, see Camenisch, 451 U.S. at 395, 101 S.Ct. 1830, or, simply, the status quo. See, e.g., Consarc Corp. v. United States Treasury Dep’t, Office of Foreign Assets Control, 71 F.3d 909, 913 (D.C.Cir.1995) (terms used interchangeably). And the “legal definition” of status quo ante has a “clear meaning” in *955 our circuit. See Consarc Corp., 71 F.3d at 913.
Black’s Law Dictionary defines status quo to mean “the existing state of things at any given date” and offers the example “[s]tatus quo ante helium” to mean “the state of things before the war.” Black’s Law Dictionary 1264 (5th ed.1979). Judicial precedent confirms that “[t]he status quo is the last uncontested status which preceded the pending controversy.” Westinghouse Electric Corp. v. Free Sewing Machine Co., 256 F.2d 806, 808 (7th Cir.1958); see also Litton Systems, Inc. v. Sundstrand Corp., 750 F.2d 952, 961 (Fed.Cir.1984).
Id. (alterations in Consarc Corp.); accord Dist. 50, United Mine Workers of Am., 412 F.2d at 168. Had the district court intended to give the Milk Producers “concrete and irreversible” relief, Maj. Op. at 947, rather than to preserve the status quo, it had the procedure readily at hand to decide the merits by consolidating the preliminary injunction hearing with the merits hearing. See Fed. R. Civ. P. 65(a)(2); Camenisch, 451 U.S. at 395, 101 S.Ct. 1830. It did not do so.
The majority appears to disregard the temporary nature of the injunctive relief by finding that it “saved” the Milk Producers a “substantial sum of money.” Maj.' Op. at 947. It asserts that the Secretary’s counsel conceded during oral argument that the Milk Producers’ savings were “permanent.” Id. at 947. Whether or not the concession was made (a matter which, to me, is far from certain),' the savings were permanent only when viewed from hindsight. The Milk Producers sought to enjoin implementation of the separate Class III Butterfat price because without an injunction, they asserted, they would suffer irreparable injury in the form of lost revenue from butterfat.[2] See Memorandum of Points & Authorities in Support of Plaintiffs’ Motion for Temporary Restraining Order and/or Preliminary Injunction & for Expedited Hearing, Jan. 19, 2001, at 2, reprinted in Joint Appendix (J.A.) at 29b. The preliminary injunction — which “enjoined the newly implemented amended regulations, made affirmative changes to the order language appearing [in the Federal Register], and restored the pricing system in place prior to the implementation of the amended regulations,” Select Milk Producers, Inc. v. Veneman, 304 F.Supp.2d 45, 53 (D.D.C.2004) (emphasis added)—prevented an immediate monetary loss. To view, as the majority does, an order that “restored” the status quo as awarding “permanent” relief, however, requires a “look back” for it became permanent only in light of events that unfolded two years later' — i.e., the Department’s February 12, 2003 publication of the Final Rule omitting a separate Class III Butterfat, price and the Milk Producers’ dismissal of their suit in April 2003. ' The preliminary injunction thus kept the Milk Producers from losing money by simply restoring the regulatory landscape that existed before the Secretary’s Interim Final Order until their lawsuit became moot.
Nor does the subsequent mooting of the Milk Producers’ lawsuit — not by adjudication but by voluntary regulatory change— bridge the gap between the preliminary relief granted and the award of “irrevers *956 ible” relief. Relying on our decisions in Nat’l Black Police Ass’n v. D.C. Bd. of Elections, 168 F.3d 525 (D.C.Cir.1999), and Grano v. Barry, 783 F.2d 1104 (D.C.Cir.1986), the majority asserts that this case is “similar to situations in which we have found that the subsequent mootness of a case does not necessarily alter the plaintiffs’ status as prevailing parties.” Maj. Op. at 947. But, as Thomas itself noted, the “specific relief’ granted in Nat’l Black Police Ass’n and in Grano “was concrete and could not [have been] reversed despite a subsequent finding of mootness.” 330 F.3d at 493. In Nat’l Black Police Ass’n, we held that the plaintiffs qualified as “prevailing parties” under 42 U.S.C. § 1988 because the district court, after holding a five-day trial, “issued an injunction on the grounds that the limitations [on campaign contributions] unconstitutionally infringed the free speech rights of candidates and the free association rights of contributors,” which, the court said, constituted a “a real-world vindication of their First Amendment rights.” 168 F.3d at 527-28. Similarly, in Grano, we held that the plaintiffs qualified as “prevailing parties” under 42 U.S.C. § 1988 because their “success before the District Court was clearly ‘on the merits’ ” and was in “no way ‘procedural’ ” in that the summary judgment they won had the “external effect of postponing the razing of the tavern until the election could be held.” 783 F.2d at 1109-10. Even more recently, in Role Models Am., Inc. v. Brownlee, 353 F.3d 962 (D.C.Cir.2004), we held that the plaintiff, a non-profit educational organization, qualified as a prevailing party under the EAJA by obtaining a permanent injunction which “postponed] conveyance of Fort Ritchie until the Secretary complie[d] with the relevant regulations.” Id. at 966. There we distinguished Thomas on the ground that the plaintiff in Role Models Am., unlike the Thomas plaintiff, obtained the “precise relief it sought,” ie., the “opportunity to compete for [the property].” Id. The difference between Grano, Nat’l Black Police Ass’n and Role Models Am., on the one hand, and Thomas and this case, on the other, is easy to see; In Grano, Nat’l Black Police Ass’n and Role Models Am., the plaintiffs received relief on the merits, here as in Thomas, the plaintiffs did not. Nor can it be said, as the majority does, that this case is like Grano in that the “Milk Producers’ claim was fully vindicated by the court-ordered change in the parties’ relationship.” Maj. Op. at 948 (emphasis added). The Grano plaintiffs’ claim was fully vindicated because the district court, granting summary judgment in their favor, gave them precisely what they sought: a delay. See 783 F.2d at 1107, 1109. The Milk Producers, by contrast, did not sue the Secretary to delay the regulation but to invalidate it. Thus, while the Grano mootness resulted from the plaintiffs’ full vindication on the merits — ie., the ultimate passage of the initiative[3]—here the mootness resulted from the Secretary’s voluntary action- — ie., a new regulation without the challenged Class III Butterfat price. In short, “the change in the parties’ relationship” in Grano was court-ordered; here it was not.
The majority explicitly acknowledges the difference, see Maj. Op. at 948, but reconciles this case with Grano and Nat’l Black Police Ass’n by declaring that “Milk Producers secured a preliminary injunction in this case largely because their likelihood of success on the merits was never seriously in doubt.” Maj. Op. at 948. But “likelihood of success on the merits” does not equal “success on the merits.” See Camenisch, 451 U.S. at 394, 101 S.Ct. *957 1830. If “likelihood of’ success on the merits suffices here, why not in Thomas? While I agree that the Secretary does appear to have faced an uphill battle on the merits, the merits were never reached. And to rely only on the plaintiffs’ likelihood of success on the merits, without regard to the other relevant factors — ie., irreparable harm, the interests of other parties and the public interest, see, e.g., Cobell v. Norton, 391 F.3d 251, 258 (D.C.Cir.2004)—in order to determine whether the preliminary rehef the Milk Producers obtained effected a “court-ordered ‘chang[e] [in] the legal relationship between [the plaintiff] and the defendant,’ ” Buckhannon, 532 U.S. at 604, 121 S.Ct. 1835 (quoting Tex. State Teachers Ass’n, 489 U.S. at 792, 109 S.Ct. 1486) (alterations in Buckhannon), seems a tricky proposition. How much of a “likelihood of success” is enough? Will a 75 per cent likelihood do? How about 50 per cent with a strong public interest showing to boot? The majority had to first collapse the standard four-factors test for granting preliminary injunctive relief into one factor — likelihood of success — and then equate likelihood of success with success in order to declare the Milk Producers “prevailing parties.” But Buckhannon and, later, Thomas, never contemplated such complicated footwork to follow what was intended to be a clear-cut path.
In a case similar to this one the Fourth Circuit held that a preliminary injunction did not effect a court-ordered change in the parties’ legal relationship. Smyth v. Rivero, 282 F.3d 268, 276-77 (4th Cir.2002). In Smyth, the plaintiffs contended that they were “prevailing parties” under 42 U.S.C. § 1988 because they obtained a preliminary injunction preventing the Virginia Department of Social Services from denying them welfare benefits under a new paternity identification policy. Id. at 275. The Fourth Circuit disagreed, explaining that a preliminary injunction “is closely analogous ... to the examples of judicial relief deemed insufficient in Buckhannon.” Id. at 276. As to the plaintiffs’ likelihood of success on the merits, the court explained that .“[a] district court’s determination that such a showing has been made is best understood as á prediction of a probable, but necessarily uncertain, outcome” because “the merits inquiry in the preliminary injunction context is necessarily abbreviated.” Id. The court observed, moreover, that the district court must be guided not only by the plaintiffs likelihood of success “but also by other considerations, notably a balancing of likely harms.” Id. While the balance of interests is “well suited to reconciling the practical, equitable, and legal concerns that face a court determining whether to grant a party interim relief, it renders such relief an unhelpful guide to the legal determination of whether a party has prevailed.” Id. at 277 (internal citation omitted). Accordingly, the court held that that “interplay” .as well as the “less stringent assessment of the merits of claims that are part of the preliminary injunction context belie the assertion that the district court’s decision to grant a preliminary injunction was an ‘enforceable judgment[ ] on the merits’ or something akin to one for prevailing party purposes.” Id. (quoting & citing Buckhannon, 532 U.S. at 604, 121 S.Ct. 1835) (alteration in Smyth).

B. “Party in Whose Favor ... Judgment is Rendered”

Turning to the second Buckhannon principle, the majority also finds this one satisfied, concluding, “[t]he 2001 preliminary injunction meets the legal definition of a judgment, and there is no dispute that it was rendered' in Milk Producers’ favor.” Maj. Op. at 949. While the majority states that “the term ‘judgment’ includes ‘a decree and any order from which an-appeal lies,’ ” Maj. Op. at 948 (quoting Blacic’s *958 Law Dictionaey 846 (7th ed.1999)), the very first entry under “judgment” in the same edition of the Black’s Law DictionaRY used by the Buckhannon Court (as well as by my colleagues) defines it as “[a] court’s final determination of the rights and obligations of the parties in a case.” Black’s Law Dictionary 846 (7th ed.1999) (emphasis added). But there is no need for dictionary one-upmanship to question the majority’s reformulation of Buckhan-non’s second “core” principle. If “any order from which an appeal lies” qualifies the recipient as “one who has been awarded some relief by the court,” Buckhannon, 532 U.S. at 603, 121 S.Ct. 1835, and therefore a “prevailing party,” will a favorable procedural ruling — say, a class certification under FEDERAL RULES OF CIVIL PROCEDURE RULE 23 — suffice? This is, after all, an “order from which an appeal lies.” See Fed. R. Civ. P. 23(f) (“A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order.”). In Hanrahan v. Hampton, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court indicated that such an order will not do. In holding that the plaintiffs were not “prevailing parties” based on the Seventh Circuit’s “interlocutory dispositions, which affected only the extent of discovery,” the Court explained that, “[a]s is true of other procedural or evidentiary rulings, these determinations may affect the disposition on the merits, but were themselves not matters on which a party could ‘prevail’ for purposes of shifting his counsel fees to the opposing party under § 1988.” Id. at 759, 100 S.Ct. 1987 (citing Bly v. McLeod, 605 F.2d 134, 137 (4th Cir.1979)).
Moreover, the Buckhannon Court itself gave the term “judgment” a more precise (and limited) meaning. See 532 U.S. at 603-04, 121 S.Ct. 1835. It stated unequivocally that, before the plaintiff can be said to “prevail,” “ ‘[rjespect for ordinary language requires that [he] receive at least some relief on the merits of his claim.’ ” Id. at 604, 121 S.Ct. 1835 (quoting Hewitt, 482 U.S. at 760, 107 S.Ct. 2672) (alteration in Buckhannon). “[T]aken together,” the Court explained, its precedent “establish[es] that enforceable judgments on the merits and court-ordered consent decrees create the ‘material alteration of the legal relationship of the parties’ necessary to permit an award of attorney’s fees.” 532 U.S. at 604, 121 S.Ct. 1835 (quoting Tex. State Teachers Ass’n, 489 U.S. at 792-93, 109 S.Ct. 1486). According to Buckhannon, then, a favorable judgment is one that affords a party some relief on the merits. See 532 U.S. at 603-04, 121 S.Ct. 1835; but see Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir.2002) (“Judgments and consent decrees are examples of [a judicial imprimatur], but they are not the only examples.”), cert. denied, 538 U.S. 923, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003). Furthermore, our own Thomas decision presents no conflict with this interpretation. See 330 F.3d at 493 (“‘[A] “prevailing party” is one who has been awarded some relief by the court.’ ” (quoting Buckhannon, 532 U.S. at 603, 121 S.Ct. 1835)). The Milk Producers did not receive the merits relief they sought — invalidation of the Class III Butterfat price regulation — by judgment but, instead, by the Secretary’s voluntary action.

C. “Judicial Relief’ Requirement

The majority explains that the Milk Producers received “judicial relief’ because they “asked the District Court for equitable relief in the form of a preliminary injunction that would enjoin the implementation of the December 2000 rule before the separate price for Class III butterfat *959 took retroactive effect.”[4] Maj. Op. at 949. Accordingly, in the majority’s view, “[w]hen the District Court issued the injunction, it granted Milk Producers the precise relief that they had requested.” Id. Not so. The sole effect of the preliminary injunction was to preserve the status quo, not give the Milk Producers their desired relief: to wit, a new and procedurally correct rulemaking on the Class III Butterfat price. See Milk Producers’ Complaint for Declaratory & Injunctive Relief, Jan. 11, 2001, at 18-19, reprinted in J.A. at 24-25. Ultimately, the Secretary, by voluntary action, gave them the “precise relief’ they sought. The majority’s attempt to link the preliminary relief and the final relief sounds suspiciously like the “catalyst theory” jettisoned by the Buckhannon Court. See Buckhannon, 532 U.S. at 605, 121 S.Ct. 1835 (“A defendant’s voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.”). That is, while the preliminary injunction no doubt helped prompt the Secretary to abandon the separate Class III Butterfat price, “judicial prompting,” Buckhannon made plain, is not enough.
The district court used similar reasoning, explaining that, given the retroactive nature of the Secretary’s price announcement, the Milk Producers’ interim victory “was the only effective relief they could seek” and that “no subsequent final judgment on the merits or consent decree could award plaintiffs effective relief.” Select Milk Producers, 304 F.Supp.2d at 53. But the fact that absent the preliminary injunction the regulation would have imposed a retroactive Class III Butterfat price does not alter its preliminary nature. The district court could not have been clearer on this point.
ORDERED that until the final determination of this action, the Secretary, his officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise are ENJOINED from implementing the provisions of a new Class III Butterfat Price in amended regulations found at 7 C.F.R. Parts 1000-1135 and at [65] Fed. Reg. 76832 (December 7, 2000) and 65 Fed.Reg.. 82832 (December 28, 2000). In compliance with this Order, the Secretary is directed. to make necessary changes to the Interim Final Order as specified in Attachment 1 hereto.
Select Milk Producers, Inc. v. Glickman, No. 01 CV 00060, at 2 (D.D.C. Jan. 31, 2001) (order granting preliminary injunction) (emphasis added), reprinted in J.A. at 31. Preventing the regulations from taking effect on February 2nd was thus a necessary step toward obtaining the temporary relief the Milk Producers sought— the “loss of an estimated $5,000,000,” Select Milk. Producers, 304 F.Supp.2d at 53—but it was not the final relief they sought, i.e., to prevent regulations, which the Milk Producers alleged were procedurally defective, from ever taking effect. This required either a judgment on the merits or entry of a court-ordered.consent decree. Just as we concluded in Thomas *960 that the plaintiffs “filed a lawsuit in order to obtain a refund from NSF, but the preliminary injunction did nothing to vindicate that claim,” 330 F.3d at 493, the Milk Producers filed their lawsuit in order to invalidate the rule containing the separate Class III Butterfat price but the preliminary injunction did not “vindicate that claim.” See id.
The majority emphasizes that “this is not a case in which the Government voluntarily changed its ways before judicial action was taken.” Maj. Op. at 949 (emphasis in original). According to the majority, “[i]f the Government had acted to moot this case through voluntary cessation before there was judicially sanctioned change in the legal relationship of the parties, Milk Producers would not have been ‘prevailing parties’ ” because “as the Court noted in Buckhannon, a defendant’s ‘voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.’ ” Id. at 949 (quoting Buckhannon, 532 U.S. at 605, 121 S.Ct. 1835). This conclusion follows, of course, only if one accepts that the preliminary injunction effected a “judicially sanctioned change in the legal relationship of the parties” á la Buckhannon. I do not and neither did Buckhannon:
[A “prevailing” party is n]ot the party that ultimately gets his way because his adversary dies before the suit comes to judgment; not the party that gets his way because circumstances so change that a victory on the legal point for the other side turns 'out to be a practical victory for him; and not the party that gets his way because the other side ceases (for whatever reason) its offensive conduct.
532 U.S. at 615, 121 S.Ct. 1835 (Scalia, J., concurring) (emphasis added).
And as the majority attempts to explain away one mootness problem, it creates another. See Maj. Op. at 949-50. It acknowledges “the well-recognized principle that, normally, when a losing party is blocked from appealing an adverse judgment or order because the case becomes moot due to happenstance, the court will vacate the disputed judgment or order.” Id. at 949 (citing U.S. Bancorp Mortgage Co. v. Bonner Mall P’ship, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994)). In United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), for example, the Supreme Court stated that “[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.” Id. at 39, 71 S.Ct. 104. By following this procedure, the Court explained, “the rights of all parties are preserved; none is prejudiced by a decision which ... was only preliminary.” Id. at 40. The majority correctly explains that “ ‘vacatur is usually inappropriate when “the party seeking relief from the judgment below caused the mootness by voluntary action.” ’ ” Maj. Op. at 949 (quoting Nat’l Black Police Ass’n v. Dist. of Columbia, 108 F.3d 346, 351 (D.C.Cir.1997) (in turn quoting Bancorp, 513 U.S. at 24, 115 S.Ct. 386); citing N. Cal. Power Agency v. NRC, 393 F.3d 223, 225 (D.C.Cir.2004)). It then concludes that it is “not somehow unfair” to treat the Milk Producers as “prevailing parties,” despite the mootness of their lawsuit, because the Secretary failed to appeal and instead “voluntarily elected to moot the case.” Maj. Op. at 950. This might sound right but for the majority’s conclusion that the Milk Producers “prevailed” only because of the district court’s “likelihood of success” finding and because the mooting of the case— *961 effected by the losing party’s action— turned “likelihood of success” into “success.” See Maj. Op. at 946-48. It is one thing to say that vacatur of an adverse judgment is inappropriate if subsequent mootness is caused by the losing party’s voluntary action but quite another to prejudice the losing party based on its voluntary action that creates the mootness. The majority offers no case to support the latter and I cannot agree that the result it produces is “not somehow unfair.” Maj. Op. at 950.
My disagreement with the majority’s disposition does not necessarily mean that I believe a preliminary injunction may never constitute the sort of judicial imprimatur meriting an award of costs and fees under the EAJA. See, e.g., Fed. R. Civ. P. 65(a)(2) (allowing preliminary-cum-permanent relief after consolidated hearing). All we need decide today, is that the preliminary injunction here, by doing nothing more than preserving the status quo, did not make the Milk Producers prevailing parties. Because the Secretary had disturbed the status quo by promulgating a separate Class III Butterfat price, it was necessary for the district court to order the Secretary to restore it. This fits with the traditional office of a preliminary injunction inasmuch as “ ‘[sjtatus quo’ does not mean the situation existing at the moment the law suit is filed, but the ‘last peaceable uncontested status existing between the parties before the dispute developed.’ ” O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 1013 (10th Cir.2004) (McConnell, J., concurring) (quoting 11A Federal Practice And Procedure § 2948). Accordingly, while the preliminary injunction in Thomas restrained the government from taking action in order to preserve an existing fund and the district court here ordered the Secretary to take action in order to prevent the Milk Producers from losing funds, both preliminary injunctions operated — in different but nonetheless straightforward ways — to maintain the status quo.
Our decision in Thomas, 330 F.3d at 493, manifests a disinclination to join those circuits that have announced a per se rule rejecting preliminary injunctive relief as support for a “prevailing party” finding.[5] If the majority means to hold that the five million dollars that the Milk Producers did not lose when the district court entered the preliminary injunction comprises the “concrete and irreversible” relief which turned the preliminary injunction into relief on the merits, then I believe our circuit is endorsing a per se rule the other way. The “retained” five million dollars resulted from the preliminary enjoining of the regulation in the same way that preliminarily enjoining, say, a change in licensing requirements would result in the licensee not having to comply with them pendente lite. If the preliminary injunction eventually becomes a permanent one, the preliminary relief does too. But that is because the *962 eventual court order is a permanent (or final) one. The preliminary relief does not transmogrify into permanent relief without it. Much less should it do so when, as Buckhannon spells out, 532 U.S. at 605, 121 S.Ct. 1835, the controversy ends by other than court order.[6]
III.
The words “preliminary” and “prevailing” are not ones that easily fit together. To make them do so in this case, the majority has put together the EAJA, Buckhannon and Thomas and produced a Rube Goldbergesque result. I fear it has assumed the role Justice White warned against some time ago. Through fee-shifting statutes like the EAJA the Congress did not “extend[ ] any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted.” Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). For the foregoing reasons, I respectfully dissent.

. In Oil, Chem. & Atomic Workers Int’l Union v. Dep't of Energy, 288 F.3d 452 (D.C.Cir.2002), we held that "eligibility for an award of attorney's fees [under one fee-shifting statute] should be treated the same as eligibility determinations made under other fee-shifting statutes unless there is some good reason for doing otherwise.” Id. at 455; see Buckhannon, 532 U.S. at 603 n. 4, 121 S.Ct. 1835 (noting "[w]e have interpreted ... fee-shifting provisions consistently” (citing Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))). In Thomas v. Nat’l Sci. Found., 330 F.3d 486 (D.C.Cir.2003), we held that “Buckhannon applies to the definition of 'prevailing parties' under the EAJA.” Id. at 492 n. 1 (citations omitted).

. Although the majority refers to the money involved as "savings,” see Maj. Op. at 947, in fact the Milk Producers, the sellers, would have received reduced payments from their buyers had the separate Class III Butterfat price gone into effect. See Memorandum of Points & Authorities in Support of Plaintiffs’ Motion for Temporary Restraining Order and/or Preliminary Injunction & for Expedited Hearing, Jan. 19, 2001, at 1, reprinted in J.A. at 29b. The Milk Producers did not "save” five million dollars as a result of the prelimi *956 nary injunction; they did not lose five million dollars in revenue.

. See id. at 1109 (mootness followed referendum and therefore ”emphasize[d], rather than detracted] from, the practical substance of the[ plaintiffs'] victory”).

. The third Buckhannon factor is less a "core” principle than a caveat. See Buckhannon, 532 U.S. at 606, 121 S.Ct. 1835 (noting no attorney’s fees if plaintiff "acquired a judicial pronouncement that the defendant has violated the constitution unaccompanied by 'judicial relief' ” (quoting & citing Hewitt, 482 U.S. at 760, 107 S.Ct. 2672)) (emphasis in Buckhannon); see also Thomas, 330 F.3d at 493 ("[A] claimant is not a 'prevailing party’ merely by virtue of having 'acquired a judicial pronouncement that the defendant has violated the constitution unaccompanied by "judicial relief.” ’ ” (quoting Buckhannon, 532 U.S. at 606, 121 S.Ct. 1835 (in turn quoting Hewitt, 482 U.S. at 760, 107 S.Ct. 2672))).

. See John T. v. Del. County Intermediate Unit, 318 F.3d 545, 558 (3d Cir.2003) (“The Preliminary Injunction is an insufficient basis on which to award attorney’s fees ... because it is interim relief not based on the merits .... ”); Smyth v. Rivero, 282 F.3d 268, 277 (4th Cir.) (”[W]e hold that the preliminary injunction entered by the district court does not satisfy the prevailing party standard ...."), cert. denied, 537 U.S. 825, 123 S.Ct. 112, 154 L.Ed.2d 35 (2002); hut see Dubuc v. Green Oak Township, 312 F.3d 736, 753 (6th Cir.2002) ("With respect to a preliminary injunction, there is only prevailing party status if the injunction represents 'an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff.' " (quoting Webster v. Sowders, 846 F.2d 1032, 1036 (6th Cir.1988))); Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir.2002) ("A preliminary injunction issued by a judge carries all the judicial imprimatur' necessary to satisfy Buckhannon.”), cert. denied, 538 U.S. 923, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003).

. In responding to the dissent, the majority seems to have minimized the significance of its limiting “concrete and irreversible'' relief rationale that depends on the “retained” five million dollars, emphasizing instead that the "2001 preliminary injunction provided concrete and irreversible judicial relief ... based on the ... conclusion that Milk Producers were likely to prevail on the merits.” Maj. Op. at 948. If my-reading of its response is correct, the majority has in fact embraced a per se rule for no preliminary injunction can be granted without a showing of likelihood of success on the merits.